No. 30,197.

T. L. Blewett, *Appellee,* v. M. L. Errickson, doing business as The Union Live Stock Commission Company, *Appellant.*

(8 P. 2d 357.)

Opinion filed March 5, 1932.

*Lew E. Clogston,* of Wichita, for the appellant.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair* and *W. A. Kahrs,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action for damages for the failure of defendant to carry out an alleged contract for the purchase of cattle from plaintiff. There was a verdict and judgment for plaintiff, and defendant has appealed. The legal question argued here is the agency of defendant's representative.

The plaintiff, T. L. Blewett, resides at Olney, Tex. He and his son, T. W. Blewett, who resides near there, were engaged in the cattle business. The defendant, M. L. Errickson, is engaged in the live-stock commission business under the name of The Union Live Stock Commission Company, with offices in the Live Stock Exchange Building at Wichita. He had Chas. H. Hamilton in charge of his hog department and Bruce Porter and W. J. Murray of the cattle department. He transacted the ordinary live-stock commission business, including the buying of live stock on orders. He frequently had W. J. Murray go to the country to solicit business and to buy live stock for which he had orders, and at times, perhaps, when the market was good, told Murray to "go out and bring them in," which we construe to mean that he had Murray buy cattle for which he had no orders. Murray was paid a salary of $175 a month

and his expenses when he was out on the road for defendant, and frequently, while on such trips, drew drafts on defendant for expenses, or for live stock purchased and shipped to defendant. In the few months immediately prior to the transaction which gave rise to this lawsuit Murray had drawn as many as seventy-five of such drafts, all of which had been paid by defendant. Several of these had been drawn in favor of persons who lived in the neighborhood of plaintiff's residence for payment of cattle which Murray had purchased. On April 30, 1930, Murray purchased cattle from plaintiff's son, and in payment drew a draft on defendant, which was paid. Plaintiff knew of these transactions which occurred in his neighborhood. Murray exhibited to plaintiff and other live-stock men cards furnished him by defendant so prepared that on their face they indicated that he was a member of, or the representative of, the Union Live Stock Commission Company. On June 6, 1930, Murray went to Texas on a trip for defendant. His salary and expenses were paid by defendant. He talked with plaintiff's son about buying cattle, and said he was buying them just like he bought the first ones. The son asked him about paying for them and he said he would pay for them just like he did the first ones. The son and father got together and Murray talked to them about buying cattle. While they were talking about it the plaintiff was called away, and the son went ahead and dealt with Murray. The number of cattle and the price per head of different classes were agreed upon. The cattle were loaded and shipped to the Union Live Stock Commission Company. Murray drew a draft in payment for them upon the Union Live Stock Commission Company. A similar small draft was given for a few extra head. The cattle were driven to the pens Friday night and loaded Saturday morning. Plaintiff took the drafts and deposited them in his bank and sent them forward for payment. The cattle were shipped out and reached Wichita Sunday evening or Monday morning, and were placed in defendant's pens at the stockyards. On Wednesday Murray telephoned plaintiff that the Union Live Stock Commission Company had turned the drafts down, and asked plaintiff to take the cattle. Plaintiff replied that he did not want any cattle up in Kansas, that the cattle belonged to Murray and the Union Live Stock Commission Company, and that he would have nothing to do with them. He also sent a telegram to Murray, and, or in care of, the Union Live Stock Commission Company, stat-

ing that the sale of the cattle was a cash transaction, and that he was holding Murray and the Union Live Stock Commission Company liable on the draft. The bank in which plaintiff deposited the draft learned that it was not paid, and plaintiff and his son went to Wichita, and on Monday, after the cattle had been there a week, demanded payment of the draft. Defendant refused payment. Arrangements were made then within the next two days so that the cattle were turned over to another commission company and sold. This action is for the difference between the price the cattle brought and the amount of the draft, and some incidental expenses. Between Friday, when the cattle were taken to the stockyards for shipment, and Monday, when they reached Wichita, there had been a decline in the market at Wichita for cattle of that class of approximately two cents a pound.

In his petition plaintiff alleged that Murray was the agent of defendant in the purchase of the cattle and issuing of the drafts. Defendant in his answer denied such agency. Appellant contends that the court erred in admitting evidence of the statements of Murray to plaintiff and his son with respect to whom he represented and for whom he was acting, and cites the authorities sustaining the rule that agency cannot be established by the declarations or acts of the person who, it is alleged, is the agent of another. (*Streeter v. Poor,* 4 Kan. 412; *Motor Car Sales Co. v. Brown,* 115 Kan. 344, 223 Pac. 309.) We are not seriously troubled with that rule here. Even under the testimony of defendant, and other witnesses called in his behalf, Murray unquestionably was the agent and representative of defendant. Defendant had sent him, or permitted him to go, on this particular trip and paid for his time and expenses. He was a cattle man for the defendant and a buyer of cattle for defendant. There was also evidence of a course of dealing tending to show such agency. Such evidence was properly received. (*Hawkins v. Windhorst,* 77 Kan. 674, 96 Pac. 48; *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798; *Walker v. Eckhardt,* 122 Kan. 453, 251 Pac. 1093; Mechem on Agency [2d ed.] § 263.) Hence, whether Murray was an agent of defendant ceased to be a controverted question. The only question in controversy was whether in the instant case he was acting for himself or for his principal. Defendant's real contention was that, with respect to the particular transaction in controversy, Murray bought the cattle on his own account and not for defendant, and

argues that the acts and statements of Murray while making the transaction with plaintiff should not have been received in evidence. On this point 2 C. J. 939 states the rule as follows:

"While the declarations of an alleged agent are of themselves incompetent to prove agency, if the agency is otherwise *prima facie* proved, they become admissible in corroboration, where they constitute a part of the *res gestæ* and were made at the time of the transaction in question. Thus, where the agency has been established by independent evidence, the declarations of the agent are competent to show that he acted as agent and not on his individual account, or to show the nature and extent of his authority."

From the evidence, including that offered by defendant, it is clear that Murray was the employee of defendant, whose business, among other things, was to buy cattle; that defendant frequently sent Murray out among cattlemen to transact business for him, including the buying of cattle; that he had been so sent by the defendant to the immediate neighborhood in which plaintiff resides and had there purchased cattle for defendant, one purchase being from plaintiff's son. But defendant contends that when he started Murray out on the trip in question he specifically instructed him not to buy cattle while on that trip. There is no contention on defendant's behalf that he gave any notice to plaintiff, or cattlemen generally, of his revocation or limitation of Murray's authority on this particular trip, but had him go into the immediate neighborhood where he had previously bought cattle for defendant, with all the evidence of authority which he had previously possessed. Where there is evidence establishing an agency of this character, known to the persons with whom the agent is likely to deal for his principal, the agency will be presumed to continue until notice of revocation is given. (*Key v. Thomas Lyons Co.*, 109 Kan. 281, 198 Pac. 928.)

Plaintiff's petition in this case was in two causes of action, the first alleging agency of Murray to act for defendant in the transaction in question and the second alleging ostensible agency. With regard to the latter, 2 C. J. 574 states the rule as follows:

"Ostensible authority is such authority as a principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess, and in some jurisdictions it is so defined by statute. Ostensible authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace

694

the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."

Tested by these rules, ostensible authority was shown in this case. Defendant held Murray out as his representative to transact business for him, including the buying of cattle, and had permitted him to buy cattle, which he received and for which he paid. Those facts were known to plaintiff, who acted in good faith and relied thereon. The evidence pertaining to these transactions was proper to be received as showing those facts. Hence, whether we treat the case on the question of actual agency or of ostensible agency, the evidence was properly received and is sufficient to support the judgment.

Appellant complains of an instruction on the measure of damages. No complaint is made of the sum allowed as damages, hence error, if any, in the instruction on measure of damages becomes immaterial. Aside from that we see nothing seriously wrong with the instruction.

The judgment of the court below is affirmed.