No. 38,765

R. V. STEVENS, Doing Business as Stevens Well Service, *Appellant*, v. STAG DRILLING, INC., a Corporation, *Appellee*.

(252 P. 2d 616)

Opinion filed January 24, 1953.

*C. R. Holland*, of Russell, argued the cause and *G. I. Robinson*, of Ellinwood, and *Marvin E. Thompson*, of Russell, were with him on the briefs for the appellant.

*L. E. Quinlan*, of Lyons, argued the cause and *W. C. Attwater*, of Wichita, was with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

SMITH, J.: This was an action for services alleged to have been performed on an oil well. Judgment was for defendant sustaining its demurrer to plaintiff's evidence. The plaintiff has appealed.

The amended petition alleged that plaintiff was in the business of servicing oil wells; that defendant was a corporation; that about October 24, 1950, Spencer, Superintendent and Vice President of Stag, called plaintiff about a collapsed casing in a well and plaintiff was asked by Spencer if he would move on the lease in question, to mill out the collapsed casing; that plaintiff stated his rates for such work and was directed by Spencer to go to work as soon as possible.

The petition then alleged that about October 28, 1950, he moved his equipment on the lease and performed the services described. A verified statement of the services was attached. The petition then alleged it was agreed that plaintiff be paid for his services upon completion of the services and the charge made was reasonable; and that plaintiff was directed to cease his operation by C. L. Tyrrell, President of Stag, on the day stated on the itemized account.

Judgment was prayed for the amount shown in the statement.

The answer of Stag was first a general denial, then a specific denial that it hired plaintiff to do any work on the lease in question. The answer further alleged that one Siegrist called Spencer and asked him to call plaintiff and tell plaintiff that Siegrist wanted plaintiff to move onto the lease and mill out the collapsed casing. The defendant specifically denied that Spencer had authority to bind the defendant in employing plaintiff to mill out the collapsed casing on the described real estate. The answer further alleged that it was the custom in the oil fields that when at the direction of the operator of an oil lease a person called another to perform labor or to furnish materials on an oil lease the operator of the lease was the one who was obliged to pay.

The plaintiff's reply was first a general denial. The plaintiff also specifically denied that he was ordered to perform any services by Siegrist or anyone in his behalf and stated that at all times he was working for Stag. The reply further specifically denied that he had any knowledge of the usage and custom in the oil fields pleaded by defendant in its answer.

At the finish of plaintiff's evidence defendant demurred to it on the ground that it failed to prove facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant. This demurrer was sustained—hence this appeal.

The only specifications of error are that the trial court erred in sustaining defendant's demurrer to plaintiff's evidence.

Defendant cites and relies on authorities holding that neither the declarations nor acts of a man can be given in evidence to prove that he is the agent of another, and where agency is the question at issue it must be proved by other testimony.

The position of plaintiff is that Spencer had apparent authority to bind defendant and relies on what we said in *Townsend v. Railway Co.*, 88 Kan. 260, 128 Pac. 389, where we held:

"An act of an agent which is within the apparent but not within the real scope of his authority is binding upon the principal where otherwise loss would result to one who has in good faith relied upon such appearance.

"An act is within the apparent scope of an agent's authority when a reasonably prudent person, having knowledge of the nature and usages of the business, is justified in supposing that he is authorized to perform it, from the character of the duties which are known to be entrusted to him.

"It is a question of fact, to be determined under all the circumstances, whether an agreement to give employment for nine months is within the apparent scope of the authority of a division engineer of a railway company, who is known to have supervision over the maintenance of the tracks and bridges within a certain territory, and to make the contracts for the work connected

therewith, and who in fact has absolute control of it, except that he is limited to the expenditure of the amount appropriated by the company to that purpose each month."

This argument takes us unto an examination of the record. If there was any substantial evidence to support the theory of the plaintiff, then the demurrer to his evidence should have been overruled. We must draw all reasonable inferences in favor of plaintiff and disregard that unfavorable to him. (See *Palmer v. Land & Power Co.,* 172 Kan. 231, 239 P. 2d 960 and cases there cited.

The principal witness was plaintiff himself.

He testified that Spencer called him on October 26, 1950, and said he was tool pusher for Stag and that they had the well in question and had a collapsed casing and he wondered if plaintiff could "mill it out;" that plaintiff told him he felt he could do it and in a day or two he would know whether he could or not and if he could not do it he could move out. There was some discussion about rates about which there does not seem to be any dispute. In response to a direct question he testified that he never heard Siegrist's name mentioned for several days and never did hear that Siegrist was to pay him. He then proceeded to testify to several instances where Spencer appeared at the lease and gave directions as to how the work was to be carried on. Spencer gave orders when he wanted a bit changed because it was dull; that the bits were billed to Stag. Spencer saw that water was furnished on the lease; that the water was billed to Stag; Spencer moved a trailer house on the lease and lived in it and Spencer told him the tubing being used by plaintiff on the lease belonged to Stag.

On cross-examination plaintiff testified that Spencer told him to look Stag up in the Blue Book, which was a directory of companies in the oil fields and the Blue Book stated Spencer was Vice-President of Stag.

In conclusion plaintiff testified that Tyrrell, the President of Stag, called him to attend a meeting at Hutchinson sometime in December, 1950; that he knew Tyrrell was President of Stag; at this meeting were Mr. Kelly, Art Snyder, Siegrist, Siegrist's boy, and plaintiff; that he was asked what his bill would be and he told them that he did not know but thought it would be between sixty-five hundred and eight thousand dollars, just an estimate; that there was no conversation about who was interested in the well and nothing was said as to whom he was to bill. He testified the operations around the well terminated around December 30, 1950; that he

received orders from Mr. Tyrrell around December 26th or 27th, 1950, to go ahead and tear down and move the equipment out; that Mr. Tyrrell called from Chase and told him it looked like it was a lost cause down there and they were going to give it up and told him to tear down. The foregoing was substantially all the evidence on behalf of the plaintiff.

When we consider it in the most favorable light from the standpoint of plaintiff, did it constitute substantial evidence that Stag held Spencer out as its agent or that Spencer had apparent authority to bind Stag? In such a case we must consider the entire course of dealing of all the parties. (See *Wilson v. Haun*, 97 Kan. 445, 155 Pac. 798.) There we held:

"To establish the relation of agency an express appointment and an acceptance thereof is not essential, but it may be implied from other facts, such as the statement of the parties, their conduct and the relevant circumstances."

(See, also, *Cummins v. Standard Oil Co.*, 132 Kan. 600, 296 Pac. 731; also *Blewett v. Errickson*, 134 Kan. 690, 8 P. 2d 357.)

At the outset, we have the call from Spencer to plaintiff with the directions to look in the Blue Book and the statement in the Blue Book that Spencer was Vice President of Stag. We do not need to decide whether this was sufficient to bind Stag. It is a circumstance, however, along with the other circumstances in the record. Next, we have the fact that Spencer, who was Vice-President of Stag, spending about all his time from October until December 30th on this lease and giving plaintiff directions as to how the work should be carried on. Then we have Tyrrell, the President of Stag, calling plaintiff to attend the meeting in Hutchinson while the work was still in progress where he was asked to estimate how much his charges were. Even though all the parties were there nothing was said to plaintiff about to whom he should look for his pay. The fact remains, however, that it was Tyrrell who called plaintiff to attend this meeting. Then at the last it was Tyrrell who called plaintiff and told him it looked like a lost cause and they were going to give it up and told him to tear down. We cannot overlook entirely a conversation between plaintiff and Tyrrell wherein plaintiff told Tyrrell he would buy a truck from him to give him an opportunity to get some of his money back and following that conversation Tyrrell sent an agent to plaintiff. When all these facts and circumstances, together with the entire course of dealings between the parties are considered, in the light in which they must be

viewed when considering a demurrer to the evidence, it is clear there was substantial evidence to prove a cause of action in favor of plaintiff and against defendant.

The judgment of the trial court is reversed with directions to proceed with the trial of the cause.