## C. A. BAILEY V. DANIEL DODGE.

1. FACTS *Inferentially Stated; Petition, When Good.* Where some of the facts necessary to constitute a cause of action are stated in the petition only inferentially, such petition may nevertheless be held good, where no objection is made to it, except by objecting to the introduction of any evidence under it on the ground that it does not state facts sufficient to constitute a cause of action.

2. MALICIOUS PROSECUTION; *Quære.* The question whether the plaintiff in an action for malicious prosecution may introduce evidence tending to show the financial condition of the defendant, for the purpose of enhancing damages, discussed in the opinion, but not decided.

3. ———— *Held,* That the court below did not err in this case in excluding evidence.

4. EXCEPTION, *Insufficient.* Where a party asks the court to give several separate written instructions to the jury, and the court refuses to give any of them, and a general exception is taken to such refusal, *held,* that the exception is not sufficient.

5. ———— Where errors are assigned, but not insisted upon in the brief of counsel, the supreme court will generally not consider them.

6. VERDICT, *Not Sustained; No Action for Slander.* In an action for malicious prosecution it was shown that the defendant filed with a justice of the peace an affidavit for a search warrant to search the plaintiff's house, which affidavit stated that certain goods had previously been feloniously taken, stolen and carried away by the plaintiff, and that they were then concealed in the plaintiff's house; and there was ample evidence introduced on the trial tending to show that the plaintiff had reasonable and probable cause for believing that these statements were true; and the defendant himself testified on the trial, among other things, as follows: "I thought that the facts set forth in the affidavit were necessary to procure the search warrant. I believed the facts therein stated to be true at that time, and I believe so yet." And there was no evidence introduced in the case tending to show that the defendant did not have reasonable and probable cause for believing that the statements made in the affidavit were true, and nothing to show that he did not have reasonable and probable cause for commencing the supposed malicious prosecution. *Held,* That a verdict in the action for malicious prosecution in favor of the plaintiff and against the defendant is against the law and the evidence; and *further held,* that, although it was not necessary to state in the affidavit that the plaintiff stole the property, or to state who in fact did steal it, yet that the allegation contained in the affidavit that the property was feloniously stolen, taken and carried away by the plaintiff, cannot constitute the basis for an action of slander or libel.

*Error from Osage District Court.*

ACTION brought by *Dodge* against *Bailey*, to recover damages for a malicious prosecution. Trial at the April Term, 1881, of the district court, and judgment for plaintiff for $1 and costs. The defendant brings the case here.

*W. A. Madaris,* and *Scott & Lynn,* for plaintiff in error.

*William Thompson,* and *Alexander Blake,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Daniel Dodge against C. A. Bailey, for an alleged malicious prosecution, claiming $10,000 damages. The case was tried in the court below, and judgment was rendered therein in favor of the plaintiff and against the defendant, for $1 and costs; and the defendant, as plaintiff in error, now brings the case to this court, claiming that the judgment of the court below is erroneous. The plaintiff in error (defendant below) claims that the petition of the plaintiff below does not state facts sufficient to constitute a cause of action; that the court below erred in permitting the plaintiff below to introduce certain evidence, and in excluding certain other evidence, and in giving certain instructions to the jury, and in refusing to give certain other instructions; that the verdict of the jury was not sustained by sufficient evidence; and that the court below erred in overruling the plaintiff's motion for a new trial. We shall consider these claims of error in their order.

I. It is claimed that the petition of the plaintiff in the court below is defective: (1) Because it does not state or allege that the defendant did not have reasonable and probable cause for commencing the supposed malicious prosecution; (2) because it does not state or allege that the proceedings constituting the supposed malicious prosecution had terminated.

Now it is true that the petition does not allege in terms

any want of probable cause or any final termination of the supposed malicious prosecution; but inferentially, we are inclined to think that the petition alleges both of these things; that is, from the facts stated in the petition, we are inclined to think that it should be inferred that the defendant had no reasonable or probable cause for commencing the supposed malicious prosecution, and that such supposed malicious prosecution had finally terminated before the commencement of this action. This question of the sufficiency or insufficiency of the petition was raised by the defendant's objecting to the introduction of any evidence under it, on the ground that it does not state facts sufficient to constitute a cause of action; and such question was not raised in any other manner.

We are inclined to think that the petition, though somewhat defective and informal, must be held to be sufficient, under such circumstances. If a motion had been made to require it to be made more specific and definite, of course the petition should not have been held sufficient as against such a motion.

II. It is claimed that the court below erred in permitting the plaintiff to introduce evidence tending to show the financial condition and circumstances of the defendant. Upon this question the authorities would seem to be somewhat conflicting. The great weight of authority would seem, however, to permit such evidence to be introduced in actions for slander; and this action for malicious prosecution partakes to some extent of the nature of that action. In both actions the character of the plaintiff is involved. In both actions the plaintiff is required to show malice on the part of the defendant. And in both actions the plaintiff, if he recovers, may recover exemplary or punitive damages. In the case of *Whitfield v. Westbrook*, 40 Miss. 311, which was an action for malicious prosecution, it was held that evidence showing the pecuniary condition of the defendant might be introduced for the purpose of increasing or diminishing the damages. The case of *Weaver v. Page*, 6 Cal. 681, which was an action

for malicious prosecution, comes very nearly holding the same doctrine. The case of *Belknap v. Boston & Maine Railroad Co.*, 49 N. H. 358, which was an action of trespass for an assault upon the plaintiff, and for ejecting him from the defendant's cars, would seem to hold (though it is not quite clear) that the pecuniary condition and circumstances of the defendant may be shown in evidence for the purpose of enhancing the damages. In the case, however, of *Guengerech v. Smith*, 34 Iowa, 348, which was an action for an assault and battery, and an action in which exemplary damages were properly allowable, it was held that evidence of the financial condition and ability of the defendant could not be introduced in evidence. The Iowa decision is probably correct, and perhaps also the Mississippi decision. The actions of libel, slander and malicious prosecution may form an exception to the general rule in this particular. We shall leave this question open, however, for the present.

It is also claimed that the court below erred in permitting certain evidence to be introduced tending to impeach the testimony of one of the defendant's witnesses. We are inclined to think, however, that the court below ruled correctly in this particular.

III. It is also claimed that the court below erred in excluding certain evidence; but we are inclined to think that the court below properly excluded the evidence.

IV. It is claimed also that the court below erred in refusing to give certain instructions to the jury. We are inclined to think that the court below did so err; but the defendant, according to many authorities, did not save the error by proper exceptions. The defendant asked the court to give thirteen separate instructions, some of which are good law and ought to have been given, while others were properly refused. The exception to the refusal of the court to give these thirteen instructions seems to be general. It is stated in the following words, to wit: "The above and foregoing are all the instructions asked for by the defendant, each and all

of which were refused by the court; and to such ruling and refusal said defendant duly excepted."

V. The plaintiff in error (defendant below) assigns for error, that the court below erred in instructing the jury; but he does not seem to insist upon this assignment of error in his brief, and therefore we shall pass to the next question.

VI. The plaintiff in error (defendant below) claims that the verdict of the jury is against the law and the evidence, and therefore that the court below erred for that reason as well as for others in overruling his motion for a new trial. He claims that the verdict is against the law and the evidence, for the reason that no malice on the part of the defendant was shown; that it was not shown that the supposed malicious prosecution had finally terminated; and that it was not shown that the defendant did not have reasonable and probable cause for the commencement of the supposed malicious prosecution.

Now as there was some evidence introduced tending to show malice and tending to show a termination of the supposed malicious prosecution, we shall pass over these two questions to the third, for upon these two questions we suppose the verdict of the jury is final. The other question — that is, whether any want of probable cause for the supposed malicious prosecution was shown — is the main question in the case; and yet the action seems to have been instituted by the plaintiff below, and tried by him all the way through, as though no such question was involved in the case at all. His petition did not allege any want of probable cause except inferentially, and, as we think, there was not a particle of evidence introduced tending to show any such want of probable cause.

The facts of the case, as they appear from the pleadings and the evidence, are substantially as follows: In 1879, School District No. 56, of Osage county, Kansas, owned certain real and personal property, among which was the following: One cedar water bucket, one school dictionary, one lamp, and four window curtains. The dictionary was Webster's unabridged dictionary. The window curtains

were also called "window shades" and "window blinds," but the majority of the witnesses called them "window curtains." About September 10, 1879, or prior thereto, this property was stolen from the school house of said school district. It is admitted by all the parties that the property was actually stolen, and there was abundant evidence tending to show that it was stolen. The property seems to have been stolen during the vacation of the school, in the summer or early in the fall of 1879. During all this time, and up to the trial of this case, the plaintiff, C. A. Bailey, was the director of the district; the defendant, Daniel Dodge, was the treasurer thereof; and J. C. Culbertson was the clerk; and the three together constituted the school board of that district. In October, 1879, a school was commenced in the school house, which school was continued till sometime in February, 1880, and during all that time the matter of the stolen property was talked about by the people of the district, including the school children; but the property was not returned to the school house, nor found, nor heard of, unless it was found or heard of at the house of the plaintiff in this action. During the latter part of the winter of 1880 several persons came to the defendant and told him that they had seen the stolen property at the house of the plaintiff, and urged the defendant, as one of the officers of the district, to take steps to recover the possession of the property. The defendant himself believed that he had seen the cedar water bucket at the plaintiff's house. The defendant and Culbertson, who was clerk of the district, had frequent conversations with reference to the matter, and Culbertson told the defendant that many persons residing in the district had also come to him and stated that they had seen the property at the house of the plaintiff, and urged him also, as a member of the school board, to take steps for the recovery of the property. One of the conversations, at least, was at a regular meeting of the school board. The plaintiff, however, was not present at such meeting. It was agreed by the defendant and Culbertson that the defendant should consult the county attorney of Osage county, and

follow his advice. The defendant accordingly went to the county seat to consult the county attorney, and there found the deputy county attorney, who was an attorney at law, and stated the facts to him; and the deputy county attorney told him that he "had better procure a search warrant and search the plaintiff's house; and that he had better not say anything about it until he got there with the search warrant, because if he knew about it beforehand, the property could easily be destroyed or put out of the way." Afterward the defendant went to S. J. Watson, justice of the peace of Fairfax township, in said county, and made the following affidavit, to wit:

"STATE OF KANSAS, OSAGE COUNTY.— C. A. Bailey, being duly sworn, says that Daniel Dodge, on or before September 10th, 1879, in the county of Osage and state of Kansas, did then and there feloniously take, steal and carry away one cedar water bucket, one school dictionary, one lamp and four window curtains, value fifteen dollars, property of School District No. 56. Said property is concealed in Daniel Dodge's house.                                        C. A. BAILEY.

"Subscribed and sworn to before me, this 25th day of March, 1880.                                        S. J. WATSON, J. P."

The defendant then filed the affidavit with the justice of the peace, and the justice issued the following warrant, to wit:

"THE STATE OF KANSAS, OSAGE COUNTY, ss.—The state of Kansas to B. G. Wilson, constable of Fairfax township, in said county: Whereas, it appearing that there are reasonable grounds for suspecting that one cedar bucket, one school dictionary, one lamp and four window curtains, the property of School District No. 56, alleged to have been feloniously taken, stolen and carried away by Daniel Dodge, are concealed in his house; you are therefore commanded forthwith to search said house, and bring said property before me, at my office, in said township; and then and there return this writ.

"Witness my hand, at my office, in Fairfax township, in said county, this 25th day of March, 1880.
                                        S. J. WATSON,
                                        A Justice of the Peace."

On March 29, 1880, the constable, B. G. Wilson, went to the plaintiff's house with the warrant, and searched the same, taking with him the defendant and Culbertson, to identify the

property, if the property could be found.   They searched the
house, but did not find any of the property.   Afterward, and
on August 16, 1880, the plaintiff commenced this action,
claiming $10,000 damages as aforesaid.

The defendant answered, denying all the allegations of the
plaintiff's petition, except such as he admitted in his answer,
and setting forth in substance, but briefly, the facts above
stated, in justification of his conduct.   On April 15, 1881,
the case was tried before the court and a jury, and the above
facts with others were shown to the court and jury.   The
plaintiff testified that he had never had any of the stolen
property in his possession, except the dictionary; and that he
had ordered one of his boys to take that to the school house,
at the time that the school was commenced in October, 1879;
and the boy testified that he had so taken it, and that he had
laid it on the teacher's desk.   The teacher however testified
with reference to this matter as follows: "There was no
dictionary in the school house of any kind.   Mr. Dodge's
boy never brought any such book to the school house.   He
brought a few old books, but no dictionary."   And no one,
except the plaintiff's two boys, ever saw the dictionary at the
school house after it was first missing; and one witness, at
least, testifies that he saw the dictionary at the plaintiff's
house after the search warrant had been issued.   The plain-
tiff owned a cedar water bucket, similar to the one belonging
to the school district.   He also owned window curtains simi-
lar to the ones that belonged to the school district; and also
owned lamps; but according to the evidence, there were some
differences between the several articles of the plaintiff's prop-
erty and those belonging to the school district.   The plain-
tiff and his two boys testified that they owned but one cedar
water bucket; and there were several witnesses who testified
that they had seen at one time, two cedar water buckets at the
plaintiff's house, one of which they believed belonged to the
school district.   The plaintiff's window curtains seem to have
been blue, or a bluish green, or blue on one side and green on
the other; while the window curtains belonging to the school

district were green. All the window curtains seem to have had some accidental marks or spots upon them; but those upon the plaintiff's window curtains were produced by plaster and whitewash, while those upon the window curtains belonging to the school district were produced by candles and lamps. The window curtains belonging to the school district had spots of grease upon them, and one or two of them were slightly scorched. It would seem from these differences between the two sets of window curtains, that one set might easily be distinguished from the other; and there were several witnesses who testified on the trial that they had seen the window curtains belonging to the school district at the plaintiff's house.

All this had been communicated to the defendant before he commenced the supposed criminal prosecution, and, as before stated, the defendant himself believed that he had seen the water bucket belonging to the school district, at the plaintiff's house. The defendant unquestionably believed at the time he made his affidavit for the search warrant, just what he stated in the affidavit; and on the trial of this case he testified among other things, as follows: "I thought that the facts set forth in the affidavit were necessary to procure the search warrant. I believed the facts therein stated to be true at the time, and I believe so yet." Undoubtedly the defendant believed so; and he had very good reasons for his belief; and there was nothing introduced in the evidence to show that the defendant should have entertained any other belief. The stolen property has never yet been found.

Upon these facts, we think the defendant had probable cause for commencing the prosecution that he did. If the plaintiff had shown that the property was not stolen, or that it was stolen by someone else than by the plaintiff, and that the defendant at the time he procured the search warrant had known these facts; or if the plaintiff had shown that the defendant knew that the property was somewhere else than at the plaintiff's house, at the time that the defendant procured the search warrant; or if the plaintiff had shown

that he took the property, as one of the school board, for the purpose of taking care of it, and that he did not conceal it, nor claim that it belonged to him, and that the defendant had knowledge of these facts, then the plaintiff would have shown that the defendant did not have any reasonable or probable cause for commencing the alleged malicious prosecution. But the plaintiff did not show any of these facts, nor any other facts that would tend to show that the defendant did not have probable cause for commencing the alleged malicious prosecution; and therefore we think that the plaintiff's action for malicious prosecution cannot be maintained. But it is claimed by the plaintiff that if the action cannot be maintained as an action for malicious prosecution, then that it may be maintained as an action for libel or slander. Now this cannot be true, for whatever is said or done within reasonable limits, in a judicial proceeding, is so far privileged that it cannot constitute the basis for any action; never libel or slander and never malicious prosecution, unless such judicial proceeding was instituted maliciously and without probable cause. (*Vausse v. Lee*, 1 Hill [S. C. L.] 197; *Sanders v. Rollinson*, 2 Strobh. [S. C. L.] 447; Townshend on Slander and Libel, §§ 220, 221, 223, 429, and notes, and cases there cited; Folkard's Starkie on Slander and Libel, § 200.)

It is for the interest of public justice that every man may give information freely in a judicial proceeding, without fear of the ultimate consequences. This is necessary for the successful suppression of vice and crime; and it is often necessary for the purpose of protecting rights and obtaining justice in civil actions. It is claimed, however, by the plaintiff in this case, that it was not necessary that the defendant should state in his affidavit for the search warrant that the plaintiff stole the missing property. Now this is true; it was not absolutely necessary that the defendant should have stated that the plaintiff, or that anyone else, stole the property. All that was really necessary in order to obtain the search warrant was, that the defendant should state upon oath that the property had been

6 — 28 KAS.

stolen or embezzled, and it was not necessary that he should state who stole or embezzled the same. We understand that the form of the affidavit in the present case was taken from Spaulding's Treatise for Justices. Swan's Treatise for Justices also says that if the person who conceals the stolen property is also believed to be the thief, then it may be stated in the affidavit that the property was feloniously taken, stolen and carried away by him. Now while it is not necessary to state in an affidavit for a search warrant the name of the person whom it is believed stole the goods, yet such a statement is not at all improper, and it would be very natural for the person making the affidavit, if he believed he knew who stole the goods, to make such a statement; and it would also be very natural for a justice of the peace having either Spaulding's or Swan's Treatise before him, to copy the form of the affidavit found in such treatise, and to state who stole the goods, provided of course that the affiant had a sufficient belief with reference to that fact to swear to the same. Of course, if a person in a judicial proceeding should state something wholly outside of the case, and independent of the case, it would not be privileged because of its being stated in a judicial proceeding. If the statement were libelous or slanderous if not made in a judicial proceeding, it would also be libelous or slanderous in such a case although made in a judicial proceeding. Judicial proceedings do not protect statements made therein, except such statements as may fairly or reasonably be made in such proceedings. But still we think that the interests of justice require that courts should construe all things said in judicial proceedings liberally, so as to protect the persons making the statements from unreasonable prosecutions for slander or libel; and this is particularly true as to persons instituting the judicial proceedings; for if such proceedings are malicious and without probable cause, then the party injured has an ample remedy by an action for the malicious prosecution.

It is not claimed in this case that the missing goods were embezzled; but all the parties agree that they were stolen.

·It is thought, however, by the defendant's counsel, that the verdict of the jury was rendered upon the theory that if the plaintiff had the goods at all, that he did not steal them, but that he embezzled them; and therefore that the affidavit of the defendant for the search warrant was not true in stating that the plaintiff stole them, and possibly that he did not have reasonable and probable grounds for believing it was true.· Now we think that the defendant had reasonable and probable grounds for believing that the affidavit was literally true; and we do not think that a man unlearned in the law, as the defendant in this case was, should be required to discriminate nicely and critically between the offenses of larceny and embezzlement.   The two offenses are kindred in their nature.   They involve about equal moral turpitude, and the punishment is the same..  (Comp. Laws of 1879, p. 338, § 88.) But, as before stated, the question of embezzlement is not in this case.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.