No. 31,539

MRS. U. S. WEAVER, *Appellee*, v. J. F. SNYDER, *Appellant*.

(29 P. 2d 1096.)

Opinion filed March 10, 1934.

*Richard E. Bird* and *Richard E. Bird, Jr.,* both of Wichita, for the appellant.

*Harold H. Malone,* of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to recover damages for injuries received by the negligence of the defendant whose car bumped into the rear of a car in which the plaintiff was sitting while waiting for the movement of two other cars ahead of it at a busy intersection of streets in the city of Wichita about 5:30 p. m., on June 28, 1932, so that her right shoulder was injured in being thrown forward in such a way that the shoulder struck against the frame of the car window. She recovered a verdict of $5,000, and defendant appeals.

The defendant claims error on three grounds: That no negligence

on the part of defendant was proved at the trial, that the verdict is grossly excessive and was given under the influence of passion and prejudice, and that a new trial should have been granted by the trial court because of the showing that one of the jurors was sleeping during part of the time when testimony was being taken.

The petition alleged negligence on the part of the defendant in driving at an excessive rate of speed, having poor and ineffective brakes on his car, failure to keep a proper lookout and turn his car away from the car in which the plaintiff was riding when it stopped, and violation of the traffic ordinance of the city of Wichita.

There were very few witnesses to the collision. The plaintiff was riding in the back seat of the car of her son-in-law, who was driving it, and his wife, the daughter of the plaintiff, was sitting with the driver in the front seat. The plaintiff was sitting at the right-hand end of the back seat. This car had stopped behind two or more cars at a street crossing, and the car of the defendant came up behind and struck the right-hand bumper of the car in which the plaintiff was sitting, bending it and breaking a bolt in it. There were no cars on either side of this procession and plenty of room to pass by on either side of it. The son-in-law testified that after he had stopped his car he had not started up again, but by looking in his mirror he saw defendant's car coming behind him at a high rate of speed about sixty feet back of him. He estimates the rate of speed to be more than that allowed by the city ordinance, and because it was coming right toward his car he put his foot on the brake and had it on at the time of the impact.

When the collision occurred both men got out and looked at the points of contact. The car in which the plaintiff was sitting was injured as stated above, but no injury was noted on the car of defendant. They then went forward to the car door where plaintiff was sitting, and the plaintiff seemed stunned but soon recovered; and the plaintiff, her daughter and son-in-law all testify that defendant said "it is my fault, my brakes didn't work. My brakes wouldn't hold, they have been bothering me all afternoon."

The defendant testified he was driving at possibly fifteen or sixteen miles an hour, that he had slowed down before coming close to the car occupied by plaintiff, but he thought it had started up again and then he started on and found he had to put on his emergency brake in order to stop quickly. Defendant positively denied saying anything about the collision being his fault or concerning his brakes

being defective. He said he traveled a great deal, and regularly had his car examined and the brakes kept in order. The mechanic who regularly did this work for him testified that the brakes were not defective but were in good condition.

The jury was not asked to answer any special question concerning the matter of negligence, but evidently, in reaching the verdict it did, gave credence to the testimony of the three witnesses who claimed to quote him concerning the brakes being defective. There was sufficient evidence to support this feature of negligence if believed.

There was no dispute in the testimony as to there being anything in the way to prevent defendant from turning out on either side of the car in front of him to avoid striking it, nor as to the red stop light of the car that was bumped being on several seconds before the collision, which might be sufficient evidence under the charge of negligence in failing to keep a proper lookout and turn his car away from the car which was struck. We need not under these conditions discuss or determine the other elements of negligence alleged concerning excessive rate of speed and such speed as to be in violation of the traffic ordinances of the city.

The appellant complains that the verdict of $5,000 is excessive, and particularly the $2,500 allowed for the injury. The other $2,500 was allowed for pain and suffering. The injury is described as occurring by reason of defendant's car bumping into the rear of the car in which plaintiff was riding, throwing her forward and to one side, so that her right shoulder struck against the side of the car, and the injury being the breaking of the greater tuberosity of her right humerus.

Special questions 1, 4 and 5, and the answers of the jury to them, are as follows:

"1. Was the break of the bone in plaintiff's shoulder caused by the collision of the defendant's car with the car in which plaintiff was riding? A. Yes.

"4. How much do you allow plaintiff for injury caused by the break in plaintiff's shoulder? A. Fifty per cent of total verdict.

"5. How much do you allow plaintiff for pain and suffering caused by the injuries brought about exclusively by defendant's car striking the car in which plaintiff was riding? A. Fifty per cent of total verdict."

The evidence shows that the plaintiff was fifty-four years of age, weighed about two hundred pounds, had for many years suffered with arthritis in her knees and ankles, had her teeth and tonsils removed quite a while before the injury but without any lessening of the

trouble, that she was always prior to the injury able to do her own household duties and to assist her husband some in his printing establishment. Since the injury she had about a seventy-five per cent loss of the use of her right shoulder and arm, and has arthritis in the right shoulder which she did not have there before, and is unable now to do her household work. The testimony further shows that with a person in good health at the time of such an injury a practical recovery should have been had in from six to twelve weeks. It also shows that her doctor bills for the injury were $312.

The jury was asked to state the amount allowed for the "injury caused by the break in plaintiff's shoulder," and for "pain and suffering caused by the injuries," so that the answer to the former question should not include pain and suffering but be limited to the injuries. We think there is a plain distinction between the injury and the resulting pain and suffering and that the trial court under the circumstances carefully made such distinction.

There was considerable evidence by experts about the preëxisting condition of arthritis and its being aggravated or made more serious by reason of an injury and its resulting in lessening the use of the arm and in additional or increased pain and suffering. If we deduct the $312 for doctor bills we have less than $2,200 left in this part of the verdict for the injury caused by the break in the shoulder. Are these amounts allowed by the jury, or the total amount, so large under the circumstances as to shock the conscience of the court and thus convince it that the verdict, or any part of it, was rendered under the influence of passion and prejudice? The rule was stated in the recent case of *Carlisle v. Union Public Ser. Co.*, 137 Kan. 636, 21 P. 2d 395, as follows:

"In order for a judgment to be set aside and reversed on account of the excessive amount of the verdict it must appear that the verdict is so large as to shock the conscience of the court." (Syl. ¶ 5.)

A number of cases on each side of this dividing line were enumerated in the opinion in *Leinback v. Pickwick Greyhound Lines,* 135 Kan. 40, 10 P. 2d 33.

It was said in the case of *Hardwick v. Railways Co.*, 114 Kan. 843, 220 Pac. 1043:

"Error based on an excessive verdict and judgment is seldom an easy question for an appellate court to solve, and it is peculiarly difficult where the sum allowed is for pain and suffering. Of course rules for dealing with excessive verdicts are not altogether wanting; if on reading the record the conscience of

the court is shocked at the verdict, a remittitur or reversal is ordered; but there is no uniform yardstick, no hard and fast rule, by which the excessiveness of a verdict can be measured and determined as in ordinary mathematical calculations." (p. 845.)

Under these rules we cannot conclude that the verdict, or either part of it, is excessive.

The third ground of error of which appellant complains is the overruling of his motion for a new trial for the reason that during a considerable portion of the time of introducing evidence one of the jurors was sleeping soundly and did not hear a large portion of the evidence introduced. Appellant asserts the burden is shifted to the prevailing party to show under circumstances of this kind that no injury resulted to the unsuccessful party on account of the failure of the juror to give the full attention expected and required, citing *Ehrhard v. McKee,* 44 Kan. 715, 25 Pac. 193.

At a recess about the middle of the trial the trial judge in his chambers called the attention of the attorneys on both sides of the case to the fact that he had noticed before the recess a certain lady member of the jury who appeared to be nodding or dozing, and suggested excusing her and trying the case to the remaining eleven. Counsel for defendant declined to try the case to eleven, and the case proceeded to the end.

Appellant claims that the motion for a new trial on this account was overruled by the trial court apparently because appellant did not show that had the juror not been sleeping there would have been a different result. This may be a questionable basis for upholding the verdict, but in connection with such a statement by the court, in the record and in the same paragraph, appears the following:

"She says she heard all of the evidence. She seemed to be quite an intelligent—a very intelligent old lady and I don't think a new trial should be granted on that ground."

Several affidavits were introduced by defendant on the hearing of the motion for a new trial showing she was nodding with her eyes closed during the taking of testimony and that she was sound asleep so that she could not have heard a large portion of the evidence. Her own affidavit states that she was afflicted with a cataract on one of her eyes, which did not impair her vision but made her sensitive to light; that she had to face the glaring light from the open window on the west side of the court room; that she was compelled to and did occasionally close her eyes to avoid the glare from the windows;

that she believes she did not miss a single point in the lawsuit, and is sure she was fully conscious of and heard and understood every bit of evidence introduced at the trial. Such a condition is not unreasonable or impossible, and is known to most people to sometimes exist. The trial court evidently believed her statement and recognized her intelligence.

The case of *State v. King,* 101 Kan. 189, 165 Pac. 665, was one of homicide, and one of the grounds for a new trial was the same as here, and this court in affirming the ruling of the trial court used the following language:

"At the hearing of the motion it was shown that during the progress of the trial one of the jurors went to sleep, or dozed; that the court spoke to and admonished him at that time. The juror testified that he only dozed for a second or two and thought it was the only time he did so during the trial, and he believed he had not missed any of the testimony. The trial court passed upon the evidence and considered that appellant's rights had not been prejudiced by the occurrence, and we do not think the matter of sufficient importance to call for further comment." (p. 194.)

Appellee directs our attention to a general rule as to the knowledge of the disqualification of a juror, which would have to be considered if we thought there was not sufficient evidence to support the trial court in his ruling on the motion, because of his calling the attention of the attorneys on both sides of the case to the nodding of the juror and suggesting excusing her from the jury on that account. That rule is stated as follows in 46 C. J. 161:

"Where an offending juror is retained upon the jury by the consent of the parties, or is excused and the cause tried to the remainder of the jury by consent, the misconduct of the juror is waived."

We find no error in overruling the motion for a new trial.

The judgment is affirmed.