No. 19,961.

A. B. WILSON, *Appellee,* v. W. H. HAUN and GEORGE J. DROLL,
Partners, etc., *Appellants.*

SYLLABUS BY THE COURT.

1. AGENCY—*Express Appointment Not Essential—Appointment May be
   Implied.* To establish the relation of agency an express appointment
   and an acceptance thereof is not essential, but it may be implied from
   other facts, such as the statements of the parties, their conduct and
   the relevant circumstances.

2. SAME—*Evidence Shows Agency to Buy Cattle.* The evidence herein
   examined and *held* to be sufficient to uphold a finding of the jury that
   one who purchased the plaintiff's cattle and shipped them to the de-
   fendants was acting in the capacity of agent of the defendants.

Appeal from Sedgwick district court, division No. 2;
THORNTON W. SARGENT, judge. Opinion filed March 11, 1916.
Affirmed.

*Chester I. Long,* and *A. M. Cowan,* both of Wichita, for the
appellants.

*Fred Stanley, Claude C. Stanley,* and *Benjamin F. Hegler,*
all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: A. B. Wilson brought this action against
W. H. Haun and George J. Droll, partners doing business as
the Haun-Droll Live Stock Commission Company, to recover
the value of his cattle which had been received by the defend-
ants. The cattle were purchased from the plaintiff by W. B.
Gillespie, who bought cattle from several parties and shipped
them to the defendants, giving to the purchasers drafts from
a book furnished him by the defendants. According to the
testimony of the plaintiff, at the time the cattle were purchased
from the plaintiff, Gillespie began to write out a check, when
the plaintiff objected and stated that he must have the money;
but Gillespie then showed the plaintiff the draft book which
had been furnished him, saying: "It is not my check, it is
Haun-Droll's check. You won't have any trouble about it,

they are responsible. You will sure get your money." The following is a copy of one of the drafts issued to plaintiff:

"This draft is void only in payment for livestock.

No. Hogs............                                No. 1608
No. Cattle..........
Weight .............
Price...............

THE HAUN-DROLL LIVE STOCK COMMISSION CO.

Wichita, Kansas, 9/4/1912.

Pay to the order of A. B. Wilson,.........................$545.00

Five Hundred Forty-Five and no/100 Dollars.

To Union Stock Yards National Bank, Wichita, Kansas.

Buyer,      W. B. GILLESPIE."

When Gillespie entered into business relations with the defendants they gave him the draft book and directed him to use it in paying for cattle that were shipped to them and they admonished him to "buy them close." He was to buy and ship cattle to the defendants and to draw on them to pay for the cattle with the drafts so furnished him. As will be observed, the book of drafts had written across the face of each draft and near the top in bold type the name "Haun-Droll Live Stock Commission Co." and at the bottom was printed the word "Buyer," following which the name "Gillespie" was written. Across the top of the check was printed the warning: "This draft is void only in payment for livestock." The plaintiff states that he relied on the representations made and understood that he was dealing with the defendants; that his cattle were shipped to and received by them; but that the drafts issued were protested, and have never been paid. The defendants admit giving Gillespie the book of drafts and also that they instructed him not to make any drafts on them until the cattle for which they were issued had been shipped to the defendants, but say that he was never authorized to act as their agent in buying cattle. It appears that several bunches of cattle were purchased by Gillespie and shipped to the defendants, and it is claimed by them that they kept an account with him and that when cattle were shipped to them they remitted the proceeds of the sale after deducting their commission and the advances made to him. It appears that in one case they paid a draft for a thousand dollars which Gillespie had issued as a forfeit on cattle bargained for and which were

never shipped to or received by the defendants. It appears that the drafts for plaintiff's cattle were turned down by the defendants because Gillespie had drawn on them for a greater amount than the value of the cattle that had been shipped to them. Gillespie never had any account in the bank on which the drafts were drawn and no credit there. The jury found that Gillespie purchased the cattle as the agent of the defendants and not for himself.

Upon this appeal the principal contention is that the finding of the jury is not supported by the evidence. The plaintiff asked a recovery upon two grounds: (1) that the sale was made for cash, that the check was not payment, and that there was no transfer of the title to the cattle until the check was honored or the price paid, and the defendants were therefore liable for the conversion of the plaintiff's cattle; and (2) upon the theory that Gillespie was the agent of the defendants and purchased the cattle for them in that capacity. The appeal will be disposed of upon the theory of agency.

The evidence appears to be sufficient to warrant the inference that Gillespie purchased the cattle as the agent of the defendants. There was no proof of an express appointment of Gillespie or of his acceptance, but agency may be implied from the conduct of the parties and the circumstances of the case. (*Banks Bros. v. Everest & Waggener*, 35 Kan. 687, 12 Pac. 141; *Raynor v. Bryant*, 43 Kan. 492, 23 Pac. 601; *Hansford v. Meserve*, post, p. 450, 53 Pac. 835; *Linscott v. Conner*, 85 Kan. 865, 118 Pac. 693; 2 C. J. 435.) As we have seen, Gillespie was authorized to buy and ship cattle to the defendants, who cautioned him to buy them closely. They sent him out with their book of drafts, which fairly indicated that they were the purchasers of the cattle for which the drafts were to be issued. Besides labeling the drafts in bold type with the name of their company, they had printed below the word "Buyer," after which the one who happened to be sent out to purchase the cattle might sign his name. They printed on the draft an admonition to the effect that it would only be honored when issued in payment for live stock. When this book was presented to the plaintiff it would strongly tend to allay any apprehension he might have as to the capacity in which Gillespie was acting. The drafts were drawn upon de-

fendants' bank in Wichita and one in which the buyer had no funds or credit. Gillespie was directed by the defendants not to send drafts until the cattle had been shipped and billed to them. Notwithstanding this direction it appears that they paid drafts before cattle were received and which Gillespie had advanced on an option to purchase cattle. These facts furnished a basis for the inference by the jury that Gillespie was acting for the defendants. Evidently they were regarded to be more reliable and to show the real relations between the parties better than the testimony given by the defendants.

It is said that there is an element lacking in the proof as to ostensible agency or agency by estoppel, in that it is not shown that the plaintiff knew of other transactions between the defendants and Gillespie when he sold his cattle. Plaintiff claimed that Gillespie was in fact the agent of the defendants and he produced evidence from which a real agency may be implied. In 2 C. J. 444, it is said:

"An implied agency is an actual agency and is a fact to be proved by deductions or inferences from other facts, while in a strict sense agency by estoppel should be restricted to cases in which the authority is not real but apparent."

The distinction between implied and ostensible agency is stated in 31 Cyc. 1236, as follows:

"The doctrine of estoppel involves apparent or ostensible agency, which exists where the principal intentionally, or by want of ordinary care, induces third persons to believe another to be his agent, although he did not in fact employ him. As to third persons the distinction between actual and apparent or ostensible agency is unimportant, as the liability of principal and agent is the same in either case, but as between the parties themselves of course the ostensible agent is no agent at all. Apparent or ostensible agency is really agency by estoppel, and it is more strictly accurate to say that liability arises for the acts of such a so-called agent, not because there is any agency, but because the principal will not be permitted to deny it."

To prove actual agency it was competent not only to show the book of drafts which the defendants had placed in the hands of Gillespie, but also to show that Gillespie had purchased and shipped other cattle to the defendants which had been paid for with drafts furnished by the defendants, as well as any other competent fact or circumstance. That which was shown upon the face of the drafts which Gillespie was author-

ized to use tended to prove an implied appointment, and it also went towards establishing ostensible agency, as the book. of drafts given to Gillespie had the appearance of authority from the defendants. From these the plaintiff was led to believe that Gillespie had authority and relied upon what he told him. If a person knowingly causes or permits another to act as though he were his agent, he is estopped to deny such agency to the injury of a third person who, relying upon the appearance of agency, in good faith and without negligence, dealt with such agent. This rule applies in cases in which there is an apparent instead of a real agency, and there the principles of estoppel apply and can only be invoked by one who knew and relied on the acts and conduct of the principal. (31 Cyc. 1237; 2 C. J. 461.) As already said, the evidence which went towards proving ostensible agency tended also to show a real implied agency, and with the additional facts which might not have been admissible to show agency by estoppel is deemed to be sufficient to uphold the finding that there was an implied agency.

Complaint is made of an instruction which in effect stated that if the drafts given by the defendants to Gillespie and containing a certain notation were actually used in payment for the cattle and were paid by the defendants knowing that they had been given in payment for cattle, the jury *should* consider this fact in determining the interpretation put on the notation by the defendants and the meaning in which it was used. Exception was also taken to another instruction which substantially advised the jury that if the defendants furnished the drafts and instructed Gillespie to buy cattle which were to be delivered to them and that they were to pay his drafts, but that the drafts were not to be delivered until the cattle had been billed to the defendants, and that Gillespie had bought other cattle and given drafts therefor which the defendants had paid, the jury *should* consider this as a circumstance tending to show that he was acting as the agent of the defendants. The contention is that the word "should" is of an imperative character, and so considered there was an invasion of the province of the jury. The term as used is subject to criticism, but judging from the whole record it was evidently used in a

29—97 KAN.

permissive sense and meant no more to the jury than if the word "may" had been used. It is not deemed to be a ground for reversal.

The judgment of the district court is affirmed.