No. 29,792.

Lloyd Cummins, *Appellee*, v. The Standard Oil Company of Indiana, *Appellant.*

(296 Pac. 731.)

Opinion filed March 7, 1931.

*E. S. Rice, W. S. Rice,* both of Smith Center, *Charles H. Mayer, Roscoe P. Conkling* and *Floyd M. Sprague,* all of St. Joseph, Mo., for the appellant.

*A. W. Relihan* and *T. D. Relihan,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This action is for a recovery by a salesman for defendant company, at its bulk oil station at Smith Center, Kan., of rebates amounting to $692.45 with interest in accordance with an oral contract alleged by the plaintiff to have been made with a representative of the defendant company. The defendant appeals from a verdict and judgment rendered in favor of the plaintiff.

The petition alleged that one Orr, assistant general manager of the defendant company, agreed orally with the plaintiff, in order to meet severe competition in Bellaire, a town within the territory of

the Smith Center bulk station, to reduce the price on oil sold to the filling station customer of the company in that town so as to enable such customer to meet the competition and retain the trade; that the tickets were to be made out at the regular price and plaintiff was to charge himself with such difference in price and remit with the duplicate sales tickets the regular price, and that defendant would make up to plaintiff the loss he sustained by way of expense and rebates in a sufficient sum to reimburse him for such loss; that he did so for eleven months and incurred the amount of loss stated; that the defendant received and accepted said benefits, but refused to allow or pay the rebates.

The verified answer denied that Orr was at any time the assistant general manager of the defendant company and further denied that Orr made or entered into the oral agreement alleged in the petition, and denied that he had or possessed at any time the authority to make or enter into any such contract.

The reply alleges that the company accepted the benefits of the oral agreement and knowingly ratified the acts of Orr and adopted them as its own; that the defendant company, prior to the making of the agreement, held Orr out as its agent with authority to direct matters pertaining to the sale of oil products, and that the defendant is estopped by its conduct from denying its liability for his acts.

This reply was not filed until during the progress of the trial, at which time serious objections were made to its being filed at that late hour because it injected into the case the new issues of ratification and estoppel and constituted a departure. The overruling of such objection and the refusal to strike it from the files are here urged by appellant as errors committed on the trial. The granting of such privilege out of time is never considered error unless it appears to have been an abuse of judicial discretion. In this case there does not seem to have been any request for a continuance on that account, and while the reply did for the first time regularly and completely plead ratification and estoppel, it cannot be called a departure from the allegations of the petition nor be considered as raising entirely new issues, for with the probably incomplete allegation of the petition as to the defendant receiving and accepting the benefits of the oral agreement the defendant could not have been surprised as to the drawing of the logical and legal conclusion therefrom, namely, ratification and estoppel.

A careful examination of the pleadings and the evidence convinces us that the question of agency is not involved in this case. The petition alleged that Orr was "assistant general manager" of the defendant company, and the verified answer specifically denied that he was "assistant general manager," and his own evidence and that of others all agree that he was not assistant general manager, but was assistant manager of the defendant company, either of which would be more than sufficient to constitute him as an agent of the company. This, of course, is entirely apart from the question as to the extent of his authority, which is one of the vital issues involved.

Appellant urges that the evidence of the witnesses Nichols and O'Neil was incompetent and its admission prejudicial because it was the only evidence on which the appellee based the authority of Orr to make the alleged contract, and that it was hearsay. These two witnesses were in the employ of the defendant company, serving certain districts of Kansas, and they testified over objections of the defendant as to having a conversation with Orr about the competitive situation at Bellaire, which town and the entire Smith Center bulk station district was in the district of the witness Nichols. With the agency feature out of the case, and the real issues being the authority of Orr to make such a contract and whether or not such a contract was in fact made, the testimony of these witnesses as to what Orr said to them about the making of such a contract was perfectly competent. The brief testimony of Nichols was as to having a conversation with Orr at Lebanon, Kan., in his territory and in the presence of witness O'Neil, about the competition at Bellaire, and he said Orr told him "to go back to Bellaire and meet the price," and as to complying with this order he said, "I stopped there and told them that I had received authority to meet the price, to drop them."

The testimony of O'Neil was that he heard the conversation between Orr and Nichols at Lebanon about the reduced prices at Bellaire, and further said "Nichols asked him if he could meet this price, and he approved, told him that he could, and the subject was dropped immediately."

This evidence goes directly toward establishing one of the main issues in the case, viz., whether or not a contract to meet these prices was in fact made. If evidence is competent for this one purpose, it will not be excluded because it may be objectionable for

the purpose of proving authority. It may not in itself be sufficient to establish authority, but it appears to tend properly along that line, and it was unquestionably proper to prove the existence or making of such a contract.

An examination of the abstract convinces us that the testimony of these two witnesses was not the only evidence on which the appellee could base the authority of Orr to make such a contract for the company. The testimony of the plaintiff and Orr furnishes something along this line. That of Orr was directly and positively against his having any such authority, but his evidence gives some of the details and methods of handling business which might very strongly indicate to the plaintiff and the public generally that he and his branch office at St. Joseph, Mo., had authority to make such a contract. He said, with reference to the change of price, his office would notify the head office at Chicago as to the competition and situation and the head office would in turn notify his office of permission to meet the competition, and then he would send out that information to the bulk stations; that certain forms were used to mail out from his office and to notify their agents and representatives of any change in price after his office received authority from the Chicago office for the change. The manager of the St. Joseph office testified along the same line, showing how the change of prices was effected, and it plainly showed that all the contact of the bulk station agents was directly with the St. Joseph office. His evidence further shows that the agent generally procures the documentary evidence to submit for a price change and sends it to the St. Joseph office, and the ultimate reply goes to the agent from that office after hearing from Chicago. As an example, a letter of another date from the plaintiff to the manager, sending information of competitive prices, is offered in evidence.

The evidence of the plaintiff as to this feature of the case was that he was employed by the St. Joseph office, received his instructions as to prices through them, and the business of the bulk station was carried on through that office. That he knew nothing about handling these matters except what those over him told him, and never saw any members of the Chicago office. He further stated that he took photographs of a sign which showed that they were selling gas for sixteen cents in Bellaire when the price of the Standard was twenty cents, and mailed them to the St. Joseph office.

One of these photographs shows it was taken on March 29, 1926, and the alleged oral contract was claimed to have been made April 12, 1926. Ample time apparently intervened between the taking of the photographs and the conversation with Orr for the usual process to be followed as outlined by the defendant. With such matter put up to Orr and the St. Joseph office for a reduced price it would have been more than presumptuous for the plaintiff to have demanded from the only superior with whom he dealt his authority from Chicago before giving any credit to his statements. The only thing lacking, as shown by the evidence, was the use of the form generally used to note change of prices, but plaintiff says Orr gave a reason for not making the matter public at that time.

Appellant cites many cases to the effect that the acts and declarations of an agent, or the fact that he made such a contract, are not sufficient to prove agency or his authority. But that is not our case. Here all the acts and declarations of Orr, the representative, are that he did not make the contract alleged and that he had no authority to make it. Some of the cases, and particularly the case of *State v. Tillotson,* 85 Kan. 577, 117 Pac. 1030, recognize the rule of implied authority which can be drawn from the whole course of conduct.

It was held in the case of *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798:

"To establish the relation of agency an express appointment and an acceptance thereof is not essential, but it may be implied from other facts, such as the statements of the parties, their conduct and the relevant circumstances." (Syl. ¶ 1.)

The same rule was announced in *Walker v. Eckhardt,* 122 Kan. 453, 251 Pac. 1093, and in the authorities therein cited it is made plain that in establishing authority with a corporation which can act only by its officers it is not necessary or practical to produce records and documents showing authority, but his authority may be implied from the character of his position or the necessities of his business, always, of course, to be apparently within the usual and ordinary line' of his business.

Exception is taken to the court's instruction along this line, particularly because the plaintiff had inside knowledge as to the company's plans and methods of transacting business which the public did not have. The plaintiff was one of the public, and besides there is no testimony in the case showing knowledge on his

part which the public did not have or could not imply except possibly the use of the price form not used in this particular case for special reasons claimed to have been given.

The overruling of the demurrer to the evidence is urged as an error going to the insufficiency of the evidence proving authority, and also as to that tending to show the making of the contract. On the latter subject it may be stated that in addition to the evidence of the witnesses Nichols and O'Neil the testimony of the plaintiff on this subject should be briefly noted. He stated the conversation between himself and Orr as to the making of the contract and how the matter was to be handled as well as the reasons for the temporary deviation from the usual course. In this connection it should be observed that Orr admitted having a conversation with plaintiff on this subject, and also another conversation with witnesses Nichols and O'Neil, but says in both of those conversations he positively refused and declined to do anything with reference to the reduction of price.

We concur with the trial court in holding there was sufficient evidence in favor of the plaintiff on the question of the making of an oral contract to submit the question to the jury, and that is all that is necessary on appeal for us to determine where there is a conflict of testimony.

As to the instructions given concerning the receiving of the benefits, knowingly ratifying the contract and being estopped from denying the authority, the statement is rather sweeping when it is claimed that Orr and the company never had any knowledge or notice of the making of the alleged contract until this action was brought. Nichols testified he received word from the St. Joseph office within one month after his conversation with Orr that they could not get the cut price through. Both Orr and the St. Joseph office knew from the conversations and the photographs that their business at Bellaire had about ceased. They necessarily knew that all at once, immediately after conversations had by Orr, it was renewed and kept up thereafter. Reasonably cautious folks, and especially business people, would wonder why. Putting all these circumstances together, we think both Orr and the office at St. Joseph had sufficient information, with the large remittances coming in from the sales made to the station at Bellaire, to be charged with knowingly ratifying the contract which made such receipts possible after an almost complete loss of business at

that station, and that there was no error in submitting to the jury the question of estoppel as it was done in the instructions given.

We find no error in the giving of the other instructions, nor in overruling the motion for a new trial.

The judgment is affirmed.