No. 30,753.

Zelma F. Hyson, *Appellee*, v. The Bankers Mortgage Company, *Appellants.*

(14 P. 2d 726.)

Opinion filed October 8, 1932.

N. J. *Ward* and F. A. *Holder,* both of Topeka, for the appellants.

F. J. *Oyler,* G. R. *Gard,* both of Iola, and R. O. *Mason,* of Topeka, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: Zelma Hyson brought this action against the Bankers Mortgage Company to recover $1,000 which she alleged she had paid to defendant for a coupon mortgage bond of the defendant, and which defendant had failed and still refuses to deliver to her.

Upon a trial with a jury the plaintiff recovered the sum of $1,245, the amount of the bond and the interest thereon from the time payment was made. The defendant was a corporation engaged, among other things, in issuing and selling its mortgage bonds, including what was known as the ten-year six per cent coupon first-mortgage bond. The defendant had procured from what is spoken of as the blue-sky board license for Charles N. Anderson to act as its agent in the sale of its bonds. He was sent out equipped with literature to show to prospective customers, as to the responsibility, means and methods of the company. He visited the plaintiff in Allen county and solicited her to purchase a bond of the company.

In some way he learned that she was the owner of a United States bond for $1,000 which had been placed in a bank for safe-keeping, and he urged her to buy a bond of defendant, which would yield much larger interest than the government bond. He induced her to sign a printed application which the company had prepared and sent out for the purchase of a ten-year six per cent coupon mortgage bond. On the application was the statement in small print: "All payments must be made by check, payable direct to the Bankers Mortgage Company." When the purchase was made the agent presented to plaintiff, for her signature, a printed note furnished by the company in payment of the bond. The following is a copy:

"$1,000                                                    Nov. 15, 1927.

Demand after date........promise to pay to the Bankers Mortgage Co., or bearer, one thousand no/100 dollars at Centerville State Bank. Value received, with interest before and after maturity at the rate of........per cent per annum until paid.

"Exchange for bond return.                    (Sgd) ZELMA F. HYSON.
"(Indorsed on back)  CHAS. N. ANDERSON, Agent."

At that time the agent gave the plaintiff a receipt which reads as follows:

"All payments must be made by check payable direct to the Bankers Mortgage Company.
                                                         Nov. 10, 1927.

"Received of Mrs. Zelma F. Hyson ($1,000) one thousand no/100 dollars in payment of ten-year six per cent coupon first-mortgage bond for 1,000 dollars ($1,000), to be issued by the Bankers Mortgage Company of Topeka, Kansas.                    (Sgd) CHAS. N. ANDERSON, Salesman.

"If bond is not received within 10 days from date of application, notify company."

Within a few days and after plaintiff sold her government bond and placed the proceeds in a local bank, she was again visited by the agent, who presented a check made out substantially like the note, payable to bearer.

"Centerville State Bank of Centerville, Kansas. Pay to Bankers Mortgage Company or bearer ($1,000) one thousand and no/100 dollars. For value received, I represent the above amount is on deposit in said bank or trust company in my name, is free from claims and is subject to this check.
                                        "(Signed)   ZELMA F. HYSON.
"(Indorsed on back)  Bankers Mtg. Co., CHAS. N. ANDERSON."

This check given as a substitute for the note was cashed by the fiscal agent, Anderson, and the note was later received by plaintiff. The bond purchased was not delivered to her and, upon inquiry of defendant, she was told that no payment had been received from

the agent, Anderson, or anyone else, and that no bond had been or would be issued, as the company claimed it was not liable on the sale made by Anderson. Defendant informed plaintiff that Anderson, who had disappeared, had been discharged by the company as it learned "that he was not writing his business straight." In its answer the defendant claimed that the check was never delivered to defendant by Anderson and was never indorsed by anyone authorized to do so. However, in the original answer of defendant, it alleged that "Anderson had authority to receive a check from the applicant of such coupon bonds, payable to this defendant and to receipt for such check on a form, a copy of which is attached to the petition."

In an amended answer defendant afterwards alleged that Anderson had no authority to accept a check in payment of the bond unless it was made payable direct to the company. The evidence tended to show that Anderson had been duly appointed and had acted as the fiscal agent of the defendant with the right to sell bonds and accept checks in payment, but insisted that the checks were to be made direct to the defendant, of which the plaintiff was advised by the printed matter in the application which she signed, that checks must be made directly to the company and that as this was not done, no liability against the defendant arose.

The jury found in answer to special questions submitted that on November 10, 1927, plaintiff signed the application quoted for the purchase of a $1,000 bond of the defendant. That on November 15 she executed the note quoted and delivered it to Anderson, the agent, who in turn gave her the receipt quoted. It was also found that the application and receipt each contained statements that: "All payments must be made by check, payable direct to the Bankers Mortgage Company, and that plaintiff had knowledge of such statements before signing the check." The payee in the check was designated as the Bankers Mortgage Company or bearer. Another finding was that the Bankers Mortgage Company had authorized Anderson to accept payment for the coupon bond involved in this case other than by check payable direct to the Bankers Mortgage Company, and that this authority was given him when he was appointed agent by Kell, the treasurer, and sales manager, and by furnishing Anderson with blank form of notes reading payable to the Bankers Mortgage Company or bearer. That Anderson had not been authorized by the defendant to indorse the particular check in question. That the de-

fendant never received any of the proceeds from the check in question and had not issued the bond, and that Anderson cashed the check in question and wrongfully converted the proceeds thereof to his own use. The defendant contends that under the evidence Anderson did not have either express, apparent or ostensible authority to accept a note or check in payment of the bond sold and therefore the company is not liable for the payment that was made. A reading of the record, however, satisfies us that a correct result was reached by the jury and that the evidence is sufficient to sustain the judgment rendered for plaintiff.

That Anderson was the agent of defendant for the sale of its bonds is beyond question. The defendant had "blue-skyed" him; that is, had procured a license for him from the state board to act as its fiscal agent, and sent him out armed with the indicia of authority to sell its bonds with printed forms of notes payable to the defendant or bearer, blank bonds, financial statements of the condition of the company and other printed material aimed to induce purchasers to buy bonds from the agent and receive payment therefor. When the sale was made a note was taken in the form prepared by the defendant, payable to the Bankers Mortgage Company or bearer, and the blanks so furnished were to be executed by the purchaser. When plaintiff sold her government bond and had obtained the money, the note was taken up by the check, which was made payable to bearer in the same form as the note given for which it was exchanged. The plaintiff, finding the agent so equipped, had good reason to believe that he had authority to complete a sale. She had reason to believe, and the evidence shows did believe, that he had authority and upon that theory she parted with her $1,000.

Defendant seeks to escape liability on the slender claim that the agent had no authority to receive and cash the check and this is based mainly on the recital in the application, said to have been printed in small type, that all payments must be made by check payable direct to the company. The check, as we have seen, was made payable to the company or bearer, just as the note was written. It was handed to the agent of the company and indorsed by him on the back, "Bankers Mortgage Company, Chas. M. Anderson." Notwithstanding the notation that all payments were to be made by check, it appears that bonds were sold by agents for cash, notes and checks, and that bonds were issued and delivered when either kind of payment was made. A secretary of the company

testified that when cash was used in the purchase of a bond, it was delivered. It thus appears that the notation that all payments should be made by checks, was not followed in practice nor deemed by the company to be controlling. Nothing in the license and other papers carried by Anderson showed any limitation of his authority to effect a sale. If these acts and papers did not show express authority, they at least showed apparent authority. When a principal sends out an agent with authority to sell bonds, the latter has implied authority to make a sale in the usual and ordinary way that such sales are effected, and if the principal by his acts and conduct permits an agent to occupy a position and to transact business in a way which, according to the ordinary experience and habits of people, indicates and amounts to apparent authority to do business in the usual way in which such business is done, third persons with whom the agent deals, acting in good faith and in the reliance on such authority, may reasonably assume that the agent had the authority exercised and that the contract made is binding. A principal who by his acts and conduct induces third persons to believe another to be his agent, with authority to effect a sale of property, is estopped to deny that such authority exists. In *Banks Bros. v. Everest & Waggener,* 35 Kan. 687, 12 Pac. 141, it was held:

"A principal is bound for the acts of his agent done within the scope of his authority, and the principal will also be responsible for the unauthorized acts of the agent where the conduct of the principal justifies a party dealing with the agent in believing that such agent was acting within and not in excess of the authority conferred on him." (Syl. ¶ 1.)

And it was also held that:

"Where an agent is held out to the world as one having the authority of a general agent, any private instructions or limitations not communicated to the persons dealing with such agent will not affect them nor relieve the principal from liability where the agent oversteps such limitations." (Syl. ¶ 2.)

In *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798, where cattle had been sold to a commission company by one acting as its agent, and there was a denial of the agency or the authority to purchase the cattle, it was shown that the party acted as agent and purchased the cattle for the principal in that capacity, and it was shown that the agent had been furnished with a book of drafts to be used in the purchase of cattle, and some other circumstances tending to prove authority, and at least had the appearance of authority from the principal. It was said:

"From these the plaintiff was led to believe that Gillespie had authority and relied upon what he told him. If a person knowingly causes or permits another to act as though he were his agent, he is estopped to deny such agency to the injury of a third person who, relying upon the appearance of agency, in good faith and without negligence, dealt with such agent. This rule applies in cases in which there is an apparent instead of a real agency, and there the principles of estoppel apply and can only be invoked by one who knew and relied on the acts and conduct of the principal." (p. 449.)

See, also, *Chamberlin Co. v. Bank,* 107 Kan. 79, 190 Pac. 742; *Walker v. Eckhardt,* 122 Kan. 453, 251 Pac. 1093; *Hilton v. Sheridan Coal Co.,* 132 Kan. 525, 297 Pac. 413; *Cummins v. Standard Oil Co.,* 132 Kan. 600, 296 Pac. 731.

As the form of note furnished by the company to be used by the agent was payable to bearer, it indicated confidence in the agent and a purpose to make it easy for him to promptly close up a sale of a bond. As a matter of fact, the sale was completed when the note payable to bearer was given and receipted for. The agent was then at liberty to transfer the note and if that had been done the plaintiff would have been held liable thereon to the bearer.

Defendant contends that notes could only be taken in payment of one type of bonds, but so far as apparent authority is concerned, we see no reason to apply the claimed limitation to the bond sold. Authority was given to Anderson to sell the bonds of the company and under the evidence the plaintiff had a right to assume that the agent was authorized to do all acts essential to accomplish a sale. There was at least apparent authority, and as the plaintiff believed and had reason to believe and rely on the authority of the agent the defendant is estopped to deny the existence of such authority.

Our conclusion is that the evidence and findings sustain the judgment and it is therefore affirmed.