No. 33,021

GLADYS LEWIS, *Appellee*, v. MONTGOMERY WARD & COMPANY, *Appellant.*

(62 P. 2d 875)

Opinion filed December 12, 1936.

*Elmer W. Columbia,* of Parsons, for the appellant.

*Payne H. Ratner, Stuart T. McAlister* and *Louise Mattox,* all of Parsons. for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages for false imprisonment and from a judgment for plaintiff the defendant appeals. Its specifications of error have been grouped under four heads, which will be considered in the order presented in its brief.

As preliminary to a discussion of appellant's argument, the following statement is made. In view of the verdict of the jury and the judgment of the trial court thereon, all disputes in the testimony must be resolved in favor of the plaintiff.

Gladys Lewis, the plaintiff, lived in the country near Parsons. She had been a schoolteacher before her marriage about ten years before and was the mother of two children, a boy four years old and a girl two years old, at the time hereafter referred to. On December 2, 1933, and at that time having $40 in cash in her pocketbook, she went into defendant's store in Parsons, accompanied by her little girl. She had some packages of merchandise purchased at another store. After making a purchase in the defendant's store she looked at ladies' dresses, then left the store and went to two other stores and then to the Town Beauty Shoppe. While she was trying on dresses in defendant's store a clerk reported to one Anderson, in charge of one department and alleged to be the assistant manager of the store, that plaintiff had put two baby dresses in her shopping bag. When plaintiff left the store Anderson followed her, and later when she came out of the Beauty Shoppe he had a uniformed policeman stop her on the street. Anderson then took her shopping bag and tore

open the packages, and not finding the dresses, inquired in a loud voice as to the whereabouts of the baby dresses she had stolen from the store. On her denial he had the policeman detain her while he went to the Beauty Shoppe to make a search. After about twelve minutes Anderson returned and stated to the policeman, "I couldn't find anything and (you) might as well release her, for she must be innocent." Later in the day plaintiff's husband went to the store and saw Bennett, who stated he was manager of the store, and who expressed regret to the husband for what had happened.

The jury, after hearing the above story with all its details, together with defendant's version of the affair, answered nine special questions, which in effect were that plaintiff was taken into custody by the policeman and restrained of her liberty unlawfully for seven to twelve minutes; that she was detained by force; that the policeman arrested her at Anderson's direction and that Anderson at the time was not acting on his own initiative as a citizen in so doing; that she suffered actual damages by her arrest, the value of which was fixed at $5,000, and returned its verdict accordingly. Defendant's motion for a new trial was overruled.

Defendant's first contention is that its demurrer to plaintiff's evidence should have been sustained because of her claimed failure to prove that Anderson was the assistant manager of defendant, and had authority, either express or implied, to do the things he was charged with having done. Two witnesses testified for plaintiff on this phase of the case. Mrs. Martin stated she worked at the Montgomery Ward Store from 1931 to 1934, and took orders and instructions from Roy Bennett, the manager; that Bennett instructed her that at any time he was out of the store Anderson was to take care of checks and business matters connected with the store; that complaints from customers or of goods stolen or any reports concerning the store were to be made to Anderson in the absence of Bennett; that before December 2, 1933, Bennett said they, evidently referring to the help, were to give Anderson the same coöperation they would give him.

Monita Harris stated she was employed at the store from May, 1933, to August, 1934. At meetings of the employees Bennett told them they were to coöperate with Anderson and that Anderson was assistant manager, and that any reports of stealing were to be reported either to the manager or assistant manager.

It is not disputed that Bennett was in fact the manager of the store. As a witness for the defense he so testified.

There was ample evidence to prove that Anderson was acting as assistant manager, and as such the employees of the store were directed to report to him thefts of goods and the other matters referred to in the evidence. The question then arises whether he had authority, express or implied, real or apparent, to cause the detention of the plaintiff as proved. It has been held that to prove agency and authority, proof of an express appointment is not necessary, but the same may be implied from the statements and conduct of the parties, the facts surrounding the transaction; in other words, that agency and authority may be proved by circumstantial evidence. (*Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798; *Cummins v. Standard Oil Co.,* 132 Kan. 600, 296 Pac. 731; *Mountain Iron & Supply Co. v. Branson,* 134 Kan. 818, 8 P. 2d 407; *Hyson v. Bankers Mortgage Co.,* 136 Kan. 259, 14 P. 2d 726.)

Perhaps the strongest case relied upon by appellant is *Mercer v. Fred Harvey, Corporation,* 116 Kan. 365, 226 Pac. 761, wherein it was held:

"A corporation is not liable in damages for the wrongful act of a subordinate agent in causing an arrest for larceny of property which was not under the care of such agent, unless it is shown that such act was previously authorized or later ratified by some official or agent of the corporation having authority to do so." (Syl.)

In that case plaintiff, a dining-car waiter, was arrested on the complaint of one Ray, an assistant purchasing agent of the defendant, who had nothing to do with the immediate circumstances out of which a claimed theft arose. This court held there was no evidence that what Ray did was within the scope of his employment. In stating the rule of liability of a principal for acts of his agent, however, it was said:

"Where an arrest is caused by a subordinate agent or employee of a corporation there is no implication that he is authorized by the company to do so except when the arrest is made for the protection of the principal's property in his immediate charge or in connection with proceedings for its recovery, or to prevent a crime at the time it is being committed. (*Canon v. Sharon, etc., St. Ry. Co.,* 216 Pa. 408; *Rossman v. American Exp. Co.,* 70 Pa. Supr. Ct. 525; *Daniel v. Railroad,* 136 N. C. 517; *Pinkerton v. Gilbert,* 22 Ill. App. 568; *Bushardt v. United Inv. Co.,* 113 S. E. 637 [S. C.]; *Sacks v. St. Louis & S. F. R. Co.,* 192 S. W. 418 [Mo.].)" (p. 369.)

Another case relied on is *Laird v. Farwell,* 60 Kan. 512, 57 Pac. 98, wherein an agent for a mortgagee in possession of merchandise caused the arrest for perjury of one who attempted to attach the merchandise. It would seem clear, as held by this court, that the

acts of the agent were not within the scope of employment. *Railroad Co. v. Brown*, 57 Kan. 785, 48 Pac. 31, is also relied on. The case is clearly distinguishable. There an employee in the claim department of the railroad company caused the arrest of plaintiff on the charge of robbing a post office. Clearly, this was not within the scope of the authority of a railroad employee.

Other of our decisions cited by the appellant have also been examined, but it is not deemed necessary to refer to any of them.

There are certain things about the conduct of a store that are known to all. One is that a store owned by a corporation must be conducted through its agents, that such agents must not only be responsible for seeing that the merchandise to be sold is offered for that purpose and when sold the consideration received, but for seeing that the merchandise is not rendered unsalable by the acts of the customers, and that it is not stolen by shoplifters and thieves. Another is that in the conduct of the business one person must have authority to see that the above acts are properly performed. And a third is that it is humanly impossible for one person to be constantly in charge. While the evidence of plaintiff was not very specific as to the size of the store, the defendant, in making its case, supplied any defect in plaintiff's proof by offering its payroll, from which it appears there were at least thirty employees. This circumstance of itself goes far to prove not only the need for but the fact there was an assistant manager authorized to assist the manager in caring for the principal's property. It is not necessary that we reiterate the evidence showing the duty of Anderson to prevent theft of goods. Under the testimony, his authority might be said to be express, rather than implied. But assuming that he had that duty, it may well be implied that he had authority to do whatever was reasonably necessary in the performance of that duty, and following a suspected person and endeavoring to recover merchandise which he thought had been stolen would be consistent with performance of that duty and in line with his authority. That he may have acted indiscreetly, or that he may have used poor judgment, does not mean that the acts indiscreetly done, or done as the result of poor judgment, were beyond his authority. As a result of what he did, an innocent person has been made to suffer, and under the circumstances his principal and not the innocent person must bear the burden. (See *Knowles v. Bullene & Co.*, 71 Mo. App. 341.) We are satisfied that the facts and circumstances proven are sufficient to

prove that Anderson, as assistant manager, had his principal's goods in his immediate charge and was under instruction and duty to prevent their being stolen. That his following plaintiff out on the streets in Parsons and causing her arrest by a uniformed policeman and endeavoring to recover the alleged stolen dresses was within the scope of his employment and necessarily implied from the nature of his employment can hardly be denied.

In connection with the demurrer it is also argued that plaintiff voluntarily submitted to the detention and was not forcibly held. We need not discuss the law applicable. Plaintiff testified, among other things, that when Anderson left her and the policeman on the street while he went to the Beauty Shoppe, he told the policeman to keep her while he went, and the policeman placed his hand on her arm and said, "Wait a few minutes." The jury evidently did not believe that was voluntary submission on plaintiff's part.

Appellant contends the trial court erred in permitting impeachment of a witness on a collateral matter. On cross-examination the witness Anderson was asked if he had been in the habit of going out on the street and searching people he thought had stolen articles from the Montgomery Ward store, which he denied. He then admitted going out of the store and asking persons taking goods to return them or pay for them and that he had done so prior to December 2, 1933. He was then asked specifically whether he had stopped Mrs. Daugherty outside the store and charged her with having stolen goods, and having her show what her handbag contained. Defendant's objection that it was an attempt to impeach on a collateral matter was overruled and the witness answered he could not recall. On rebuttal, plaintiff called Mrs. Daugherty as a witness, and over objection she was permitted to testify that on June 10, 1933, Anderson had followed her out of the Montgomery Ward store, accused her of having put something in her pocketbook that did not belong to her, and then requested permission to look in the pocketbook, which he did, finding nothing. Appellant contends that under the authorities it is established that a witness may not be impeached by showing the falsity of his answers to questions concerning facts collateral to the issue. (*A. T. & S. F. Rld. Co. v. Townsend*, 39 Kan. 115, 17 Pac. 804; 28 R. C. L. 613; 70 C. J. 1161, § 1345.) It may be conceded there is a rule to the above effect.

In *Reeves v. Brown*, 80 Kan. 292, 102 Pac. 840, it was held that—

"Except as to matters affecting his credibility, the cross-examination of a

witness should be confined to the subjects on which he testified on direct examination." (Syl. ¶ 1.)

There are, however, further rules that must be borne in mind. One is that subject to the right of the court to limit it, on cross-examination and for the purpose of testing his sincerity, memory, etc., a witness may be questioned as to matters wholly irrelevant and collateral to the issue in the case. (*State v. Smith,* 114 Kan. 186, 217 Pac. 307; *Macmillan v. Carlton,* 121 Kan. 797, 801, 250 Pac. 308.) Another is that the extent to which he may be examined is in the sound discretion of the trial court, whose ruling will not be disturbed unless abuse of discretion is made to appear. (*State v. Warner,* 129 Kan. 360, 282 Pac. 735; *State v. Smith,* supra; *Vinn v. Updegraff,* 113 Kan. 25, 213 Pac. 816.) In the last-cited case, where the trial court sustained objections to questions relating to collateral matters, it was held to be error to restrict the cross-examination of a party as a witness in his own behalf upon matters which clearly affected his credibility. In the case at bar the question at issue was whether Anderson, as a part of his duty and in line with his authority, caused plaintiff to be detained against her will and without just cause. Whether the jury would believe plaintiff's version or Anderson's of what transpired was vital to the result. In Anderson's testimony his statement tended to show just cause. To test his honesty of statement and sincerity of purpose, plaintiff was entitled to show what he had done in other instances. Up to the time he was interrogated concerning the Daugherty incident, it may be doubted that he was questioned on a collateral, as distinguished from, the main issue. When he was questioned about the Daugherty incident, either honestly because he did not remember, or from a lack of frankness and candor, he stated he did not recall. Thereafter the impeaching testimony of Mrs. Daugherty was received. Although there is danger of prejudice in opening the door too far in cases of this kind, we are not convinced the trial court abused its discretion. And certainly there is no showing by appellant, and nothing inherent in the matter itself, which leads us to believe that appellant was prejudiced.

We have examined appellant's complaints relative to the trial court's instructions to the jury. The principal complaint is that there was no need for part of them, and that the court should not have read the pleadings to the jury. As to the last complaint, it may be said the pleadings are not long nor involved, and they state

clearly plaintiff's complaint and defendant's answer to it. While it is to be preferred that the court itself analyze the pleadings and give the substance of the controversy to the jury, it has been held not to be error to incorporate the pleadings in the instructions when such pleadings are in plain and simple language, and when the issues are fairly presented by the whole instructions. (See *Williamson v. Oil and Gas Co.*, 94 Kan. 238, 146 Pac. 316; *Balano v. Nafziger*, 137 Kan. 513, 21 P. 2d 896.) The other complaints have been examined and need not be discussed.

Appellant makes no objection to the trial court's instructions respecting the amount of any verdict it may find, but it does contend that the amount found was excessive. Under that instruction the jury was advised there was no actual or fixed rule for computing damages; that the elements of recovery are for past and present mental suffering and nervous shock, and if she suffer in the future, such damages as appear to be the reasonable, natural and proper result of such condition, and fair and just in view of the injuries sustained, without regard to the character of the parties, the needs of the plaintiff, or the ability of defendant to pay, and that the verdict could not exceed $25,000. The jury's verdict was $5,000. The question of excessiveness of damages has been before this court in many cases involving physical injuries (West's Kan. Dig. Damages §§ 127 to 140; Hatcher's Kan. Dig. Damages, §§ 37 to 47), but what is said in connection with such injuries is not of much assistance in a case like that now before us. In the early case of *Swartzel v. Dey*, 3 Kan. 244, where damages for libel and slander were sought, in view of the circumstances set out in the opinion, it was held that an award of $2,000 was excessive. In another case for slander, an award of $1,500 for one proclaimed as a thief was held not excessive. (*Good v. Higgins*, 99 Kan. 315, 161 Pac. 673.) In actions for false imprisonment, varying results have been reached: In *Wheeler & Wilson Mfg. Co. v. Boyce*, 36 Kan. 350, 13 Pac. 609, where plaintiff had been detained ten days, it was held a verdict for $1,000 was not excessive. In *Gariety v. Fleming*, 121 Kan. 42, 245 Pac. 1054, where plaintiff was taken from Kansas City, Kan., to Paola, under circumstances detailed in the opinion, it was held that a verdict for $2,250 was not excessive. In *Cordell v. Standard Oil Co.*, 131 Kan. 221, 289 Pac. 472, where the manner of detention was similar to that in the case before us, but lasted for 35 to 40 minutes, it was held that an award of $500 was not excessive. In 25 C. J. 569 (False Im-

prisonment, § 186) will be found lists of many cases holding awards varying from $175 to $60,000 to be excessive and from $100 to $5,000 not to be excessive. These cases demonstrate the perplexity of the matter.

In discussing the question of excessive damages in a case of physical injuries, it was said in *Hardwick v. Railways Co.*, 114 Kan. 843, 845, 220 Pac. 1043:

"Error based on an excessive verdict and judgment is seldom an easy question for an appellate court to solve, and it is peculiarly difficult where the sum allowed is for pain and suffering. Of course rules for dealing with excessive verdicts are not altogether wanting; if on reading the record the conscience of the court is shocked at the verdict, a remittitur or reversal is ordered; but there is no uniform yardstick, no hard and fast rule, by which the excessiveness of a verdict can be measured and determined as in ordinary mathematical calculations." (p. 845.)

And that rule was approved in *Carlisle v. Union Public Ser. Co.*, 137 Kan. 636, 643, 21 P. 2d 395, and in *Sponable v. Thomas*, 139 Kan. 710, 724, 33 P. 2d 721, in both of which physical injuries were involved.

In the case before us the injuries were not physical, except as physical condition might be a result of nervous shock and mental suffering. We are not disposed to say that one may not suffer more from acts which reflect upon his good name than he would from some physical injury. Here the amount allowed by the jury is for compensatory or actual damages, and includes nothing for punitive damages or smart money. Without regard to the amount of the verdict, the fact it was for the plaintiff is a vindication of her. The amount of the verdict should compensate her only for her damages. We do not deem it necessary that the evidence of plaintiff with respect to the effect the false imprisonment had on her be set out. It has been fully considered.

The court is of the opinion the amount of the award is too great, and that the judgment should be reduced to $3,000, the plaintiff to be given an election to assent to that amount or to have another trial upon that issue. If plaintiff assents, the judgment will be modified by reducing it from $5,000 to $3,000, and as so modified it will be affirmed; otherwise the cause will be remanded for a new trial on the single issue of the amount of damages.