No. 36,703

R. E. CARVER, doing business as CARVER CONSTRUCTION COMPANY, *Appellee*, v. THE FARMERS & BANKERS BROADCASTING CORPORATION, *Appellant*.

(179 P. 2d 195)

Opinion filed April 5, 1947.

*Robert G. Braden,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes* and *Roetzel Jochems,* all of Wichita, were with him on the briefs for the appellant.

*Hal M. Black,* of Wichita, argued the cause, and *John B. Bryant,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover money for the performance of an alleged oral contract. The cause was submitted to a jury which failed to agree on a verdict. Thereupon defendant gave notice of its appeal from the decision of the trial court in overruling its demurrer to the plaintiff's evidence and certain other rulings which will be presently mentioned.

The sufficiency of the petition as a pleading is not involved. Its substance, omitting reference to informal and evidential statements to be found therein, can be stated thus: On the 26th day of October, 1945, the defendant (corporation), through one Johnson, who was then and there its authorized agent and acting for it in that capacity, entered into a verbal contract with plaintiff whereby it employed and authorized him to do construction work on a building located in the city of Wichita, to be used for a radio recording office, on a cost plus plan, the defendant to pay the actual cost of labor and material plus fifteen percent for plaintiff's services; thereafter plaintiff, pursuant to the terms of such agreement and under direction of defendant's agent, Johnson, reconstructed and remodeled the building at a total cost of $3,144.96, less a small credit for material not used; of such total amount $850 had been paid by check of the corporation on October 26, 1945, $750 by a similar check on November 7, 1945, and that a balance of $1,540.88 remained due, unpaid and owing to plaintiff from defendant, by virtue of the contract, on the date of the filing of the petition.

Defendant's answer, minus its formal parts and prayer, for reasons presently to be disclosed, is quoted verbatim. It reads:

"For answer to the petition of the plaintiff, the defendant admits the residence and post office address of the plaintiff and the corporate existence of the defendant.

"The defendant specifically denies that Charles T. (Ted) Johnson was authorized to and did act for the defendant as alleged in the petition. Defendant states that said Johnson was a bookkeeper and radio program director of the defendant and had no apparent or actual authority to bind defendant or to contract for defendant as alleged in plaintiff's petition. Defendant denies that said Johnson had any authority to enter into a contract on behalf of defendant authorizing plaintiff to make repairs and do certain construction work in the building located at 105-107 West English Street, Wichita, Kansas, said building to be used for a radio recording office. Defendant specifically denies that said Johnson made any contract for and on behalf of defendant and alleges that he had no authority to make any contract with plaintiff as alleged by plaintiff.

"Defendant further alleges that the checks given plaintiff were obtained through the fraud of the said Charles T. (Ted) Johnson.

"Plaintiff alleges that Charles T. (Ted) Johnson made said contract for and on behalf of Universal Service Agency, Inc., a corporation in which said Johnson was interested.

"Further answering, defendant denies the correctness of the account marked 'Exhibit A' and denies that it is indebted to plaintiff on said account."

Plaintiff's reply to the answer contains a general denial and other allegations of no importance on appellate review.

Reference to the specification of errors reveals that it assigns error on the part of the trial court during the course of the trial in the following particulars: (1) Admission of the testimony of one Virgil Quick; (2) overruling of the demurrer to plaintiff's evidence; (3) refusal to permit the jury to view the fourth floor of the Farmers & Bankers Life Insurance Building; (4) refusal to give instructions requested by defendant; (5) submission of certain instructions. However, appellate issues are not as involved as a cursory glance at such specification makes them appear. Errors 1, 3, 4 and 5 as assigned are trial errors and not now subject to review. (See *Ranney v. Camden Fire Ins. Ass'n,* post p. 706, 179 P. 2d 190, this day decided). Moreover, they are neither briefed nor argued and must be regarded as having been waived and abandoned (*Henderson v. Deckert,* 160 Kan. 386, 162 P. 2d 88.) Therefore, the sole issue presented for our consideration is whether the trial court erred in overruling the demurrer to the evidence.

Appellant's position that the demurrer should have been sustained is predicated upon three basic propositions now to be considered with full realization that as we do so, under the rule so well established by our decisions as to preclude necessity for their citation, a demurrer to the evidence can only be sustained when the court is able to say, admitting every fact proven which is favorable to plaintiff and indulging in his favor all conclusions which can fairly and reasonably be inferred therefrom, that he nevertheless has failed to make out one or more of the material and vital elements of his case. As we proceed we are likewise cognizant of another phase of the same rule, perhaps not so well established, but nevertheless applicable, to the effect that in the determination of a ruling on a demurrer to evidence we are not to compare evidence of the same witness on direct or crosss-examination but must accept the evidence favorable to the party adducing it. (*Burgin v. Newman,* 160 Kan. 592, 593, 164 P. 2d 119; *Harris v. Exon,* 161 Kan. 582, 584, 170 P. 2d 827.)

The first contention—except that by indirection it relates to the authority of Johnson which is directly involved in later contentions and will not now be discussed—actually is that appellee failed to establish the terms and conditions of the agreement upon which he relies for recovery. That agreement, it will be recalled, was that

Carver was to remodel the building in question and to receive repayment of amounts expended by him for labor and materials plus fifteen percent for his work and service. In fact, the gist of this claim is to be found in appellant's statement that if there was an agreement the record fails to disclose one of sufficient certainty to be legally held a contract, and in its argument that while it is true the appellee did submit a bill for the amount of work done and showed how he arrived at the amount due, he failed to prove by any of his testimony the agreement or any of its terms. We frankly concede the record presented by the abstracts, as supported by the argument of the parties in their respective briefs, on first blush seems to indicate there might be merit in appellant's contention for no rule of law is more elementary than the one that all matters which are material or essential to a cause of action must be established by evidence. Appellee in his brief neither denies nor attempts to refute appellant's claim by confession and avoidance, As a matter of fact he entirely ignores it. Faced with that dilemma we turned to the answer, heretofore quoted because of the very question now being considered. That pleading does not deny, either directly or by way of implication, that Johnson entered into the contract with appellee as alleged in the petition. What is more, it concedes its terms by stating "Johnson made said contract for and on behalf of Universal Service Agency, Inc." In this jurisdiction by express provisions of the code (G. S. 1935, 60-748) every material allegation of the petition not controverted by the answer must for purposes of the action be taken as true. That the foregoing section means just about what it says is evidenced by our decisions. (See *Hume v. Watt,* 5 Kan. 34 and *Lumber Co. v. Town Co.,* 51 Kan. 394, 32 Pac. 1100.) We then sent for the transcript which, since its receipt, has been carefully examined. It discloses, in our opinion, that not only the trial court but appellee, and appellant as well, tried the entire cause on the theory terms of the contract were not in dispute or question, the issue being whether Johnson was authorized to make them as appellant's agent. In the situation just related we have no difficulty in concluding the demurrer, insofar as it was based upon the ground the terms and conditions of the agreement were not sufficiently established to support a cause of action, was properly overruled unless, of course, the record compels a decision there was no agency. Obviously, in that event, terms of the contract, as well as questions pertaining to their performance

and to the correctness of the claim, which we note in passing were likewise established by the evidence, are of no consequence.

Appellant's last two contentions each raise the question of Johnson's authority to bind it as their agent and can be considered together. The first of the two in form as stated is that the record fails to disclose the corporation extended authority to Johnson of such a character as to bind it on the contract with appellee. The second is that appellee is barred from recovery because he failed to exercise the ordinary prudence of a reasonable man in the contracting business in dealing with a corporation in not ascertaining from the facts available to him the lack of actual authority in Johnson to execute the contract. Along with these two contentions can also be considered the one of agency mentioned as indirectly involved in the claim heretofore determined. It is that the evidence shows the contract as executed was between appellee and Johnson as an individual, not as appellant's employee.

In our consideration of the points to which we have just referred it will be necessary to again refer to the record and briefly detail portions of the evidence there found. It will be related as briefly as the importance of the subject and the circumstances permit.

On or about October 26, 1945, appellee, a general contractor of three years' experience was called by Ted Johnson, conceded by appellant to have been its employee, bookkeeper and program director on all dates in question, to come to Johnson's office on the fifth floor of the Farmers and Bankers Life Insurance Building in Wichita. He had met Johnson once before but had never had business relations with him. Pursuant to that call appellee went to the appellant's office in the building mentioned and to the floor where Johnson's office was located. There he found a girl receptionist and told her he had an appointment with Johnson. He was then admitted to Johnson's private office through a door which permitted entrance from the reception lobby, where he saw one desk, some files and a name plate on the desk with Johnson's name on it. No one else was in the office.

The court refused to permit appellee to relate the conversation he had with Johnson but permitted him to tell what happened. We quote from his testimony as it appears in the transcript.

"Q. Well, what took place there? A. He showed me a diagram, a little pencil sketch that he had lying there on his desk—

"Q. Out in the open? A. Out in the open.

"Q. Anybody could see it? A. Anybody could see it that would walk in the room.

"Q. You say you talked to Mr. Johnson? A. That is right.

"Q. Then what happened? A. He suggested we go down to the building—

"Mr. Sargent: Just a minute. We object to that as having been ruled on as objectionable.

"Q. What did you do? A. We went down to the building that the work was to be done on.

"Q. And then what? A. And took the plan with us, the penciled sketch, and looked the building all over; what was to be done at the building to make it presentable for offices; what was to be done on the inside of the building—

"Q. Then what took place? A. So when we got through talking about this building, Mr. Johnson said, 'I want you to start to work as soon as possible.'

"Mr. Sargeant: We object to this.

"Q. Then what took place? A. He gave me a check—

"Q. How much was it? A. $850.00.

"Q. Who signed that check? A. To the best of my knowledge, it was signed by Mr. Surtees and Mr. Stewart if I remember correctly.

"Q. These two executives we just had on the stand? A. That is right.

"Q. That check was—what kind of a check was it? What was on that check if you remember? A. Well, KFBI in one corner and Farmers & Bankers Broadcasting Corporation and it was made out to me. I don't remember whether the first check was to the R. E. Carver Construction Company or R. E. Carver, contractor.

Q. . . . Then what did you do? A. Proceeded to get the material for the job delivered on the job before I started.

"Q. What? A. Soon as I had the materials on the job I started to work.

"Q. Well, for how long did you work? A. It was approximately thirty days.

"Q. Well, when did you later see this Mr. Johnson? A. He would come down occasionally from the office.

"Q. Mr. Carver, what took place on or about the 2nd of November, 1945? A. I took some hardware up to the KFBI office on the fifth floor to have it approved.

"Q. What else took place on that day?

"A. Just as I started to leave the office with the hardware, I noticed some papers laying on Mr.'Johnson's desk and just as I started to leave he reached over and picked up a check and said, 'Here is another check for $750.00' and this is the check he handed me.

"Q. For $750.00 made out to R. E. Carver, contractor?   A. That is right."

With respect to the other evidence pertaining to the two checks mentioned by the foregoing witness we are not disposed to detail the testimony.   Appellee attempted by two executives of the corporation to show how they were signed and by whom and when they were paid.   The least that should be said for their testimony is that they were far from helpful, if not less than frank.   It will suffice to say a fair analysis of the transcript discloses each of such checks was written on the standard check form then used by appellant on which its name was printed in small letters and the initials KFBI in large letters, each was signed by James H. Stewart, Jr., the then treasurer of the corporation and countersigned by Paul D. Surtees its assistant treasurer, each was payable to appellee, and each was cashed by him and paid by the corporation in due course.

We do deem it necessary to relate one more bit of testimony in form as it appears in the transcript.   J. T. Koelling, a public accountant who audited the appellant's books during the latter part of 1945, after the corporation had learned that Johnson had not been faithful to the trust it had reposed in him, was also called by appellee as a witness.   Among others the transcript shows that on direct examination he was asked questions and made answers thereto as follows:

"Q. Now Mr. Koelling, have you any record there as to a check made payable to R. E. Carver?   A. Yes, sir.

"Q. What number is that check?   A. Number 12544.

"Q. Now, this is your audit that you make for the Farmers & Bankers Broadcasting Company?   A. That is correct.

"Q. Which owns KFBI.   Now, I am pointing here to this check, read what it says with reference to that check.   A. Under date of 1945, November the 2nd, Check No. 12,544; payee R. E. Carver, contractor.   Explanation: payment on remodeling contract.   Amount $750.00.

"Q. Now, have you one with reference to an $850.00 check?   A. Yes, sir.

"Q. Will you please turn to that?   Read that please.   A. Date, 1945, October 1st.   Check No. 12,358.   Payee, R. E. Carver.   Explanation: payment of remodeling contract.   Amount $850.00.

"Q. Now Mr. Koelling, from whom did you get that information that you got in your audit?   A. All of the information with the exception of the explanation came from the records themselves.

"Q. From the records. The audit you made as CPA for this defendant corporation? A. Yes, sir; with the exception of the explanation.

"Q. Now, who made that explanation? A. That was our explanation on the audit.

"Q. But who explained it to you? A. The information was given to us by either the officers of KFBI or Mr. Sargent; I am not sure which.

"Q. In other words, the officers of KFBI or Mr. Sargent, had you enter there—repeat that please. A. Payment on remodeling contract."

In passing we note it is true, as pointed out by appellant, that Mr. Koelling later qualified the statements made by him on direct examination. He was even permitted to go so far on cross-examination as to state, in explanation of the explanation placed by him on the $750 check, that officials of the corporation had stated that Johnson had told them such check had been used by him in payment on a remodeling contract which he had with Mr. Carver and that it was not any part of the business of KFBI. Nevertheless, we point out that what has been heretofore specifically quoted from the testimony of such witness on direct examination is in the transcript, it was a part of the record on the date of the overruling of the demurrer and it must, under the rule to which we have made reference, be accepted by us as true in determining whether the trial court erred.

It will, of course, be conceded there are two types of agency, one actual and the other ostensible or apparent. (1 Mechem on Agency, 2d ed., 37, § 57; 2 C. J. S. 1035, 1036, § 3; and 2 Am. Jur. 68, § 85.) Actual agency may be either express or implied. Since it is conceded there is no evidence of express authority in the instant case our problem is to determine whether the authority of Johnson in entering into the established agreement was implied or apparent. Competent record evidence to sustain either type requires the trial court's ruling on the demurrer be sustained. On the same premise, lack of such evidence requires that it be reversed.

We have said the test to be applied in determining whether implied agency exists is the one announced in 2 C. J. S. 1045, § 23, where the following statement appears:

"The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency. On the other hand, where it

does not appear that there was any express or implied intention to create the relation, it will not be held to exist, as where it appears that the agent was acting on his own behalf.

"An implied agency must be based on facts for which the principal is responsible, they must, in the absence of estoppel, be such as to imply an intention to create the agency, and the implication must arise from a natural and reasonable, and not from a forced, strained, or distorted, construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. The existence of the relation will not be assumed.

"While the relation may be implied from a single transaction, it is more readily inferrable from a series of transactions.

"An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable and to the advantage of the supposed principal, nor from facts which show that the alleged agent was a mere instrumentality."

And we have held that such agency is implied if from the statements of the parties, their conduct and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which when exercised by him would normally and naturally lead others to believe in and rely on his acts as those of the principal (*Greep v. Bruns,* 160 Kan. 48, 159 P. 2d 803).

For other decisions to the same effect see *Wilson v. Haun,* 97 Kan. 445, 155 Pac. 798; *Walker v. Eckhardt,* 122 Kan. 453, 251 Pac. 1093; *Cummins v. Standard Oil Co.,* 132 Kan. 600, 296 Pac. 731 and *Lewis v. Montgomery Ward & Co.,* 144 Kan. 656, 62 P. 2d 875.

At page 604 of the opinion in *Cummins v. Standard Oil Co.,* supra, in dealing with the rule as applied to corporations, we said it is plain that 'in establishing authority with a corporation which can act only by its officers it is not necessary or practical to produce records and documents showing authority of an agent, but his authority may be implied from the character of his position or the necessities of his business, always, of course, to be apparently within the usual and ordinary line of his business.

Likewise we have recognized the criterion of apparent authority is well stated in 2 Am. Jur. 82, § 101, where it is said:

"The liability of the principal for the acts and contracts of his agent is not limited to such acts and contracts of the agent as are expressly authorized, necessarily implied from express authority, or otherwise actually conferred by implication from the acts and conduct of the principal. All such acts and contracts of the agent as are within the apparent scope of the authority confer-

red on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. Accordingly, as defined by the American Law Institute, an apparent agent is one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another."

Following the rule just stated we held in *Greep v. Bruns*, supra, that:

"An ostensible or apparent agent is one whom the principal has intentionally or by want of ordinary care induced and permitted third persons to believe to be his agent even though no authority, either express or implied, has been conferred upon him." (Syl. ¶ 5.)

We are not disposed to delve into the labyrinth of decisions, many of which have been cited by the astute and capable counsel for appellant, dealing with the principles of law applicable to situations involving the question of when the relation of principal and agent exists. It is enough to say we have examined many of them and find they show entirely dissimilar factual situations and elements not involved in the case before us. Of a certainty no case has been cited which, so far as the facts are concerned, can be said to be decisive of the present one. Nor do we deem it necessary to review or point out particular facts disclosed by the record. They can be found by reference to the testimony which we have set forth at considerable length on that account. It must be remembered that it is our province to determine if, under the general principles to which we have referred, the record reveals any substantial competent evidence on which a finding of agency could be based, not to decide whether, under proper instructions relating to the law of principal and agent, it actually did exist as a matter of fact.

Without further laboring the issues raised by appellant it can be said we are convinced, in the light of all of the testimony, there is some evidence in the record to support a cause of action based on either implied or apparent agency. In that situation we cannot hold as a matter of law that Johnson did not have authority to execute the contract in dispute for and on behalf of the appellant or that it was entered into between Carver and Johnson as an individual but must leave decision of those factual questions to the triers of fact. Nor do we find anything in the evidence to justify a legal conclusion appellee was barred from recovery on grounds

asserted by appellant. Decision of that question is also one of fact. It follows the demurrer was properly overruled.

The judgment is affirmed.